[Civ. No. 8422. First Appellate District, Division Two.—September 27, 1933.]

OLIVER J. WILLIAMS, Respondent, v. M. SPAZIER, Appellant.

CALVIN M. ORR, Respondent, v. M. SPAZIER, Appellant.

Anthony Brazil, Francis Gill and Philip Selig, Jr., for Appellant.

Harry G. McKanny and Wyckoff, Gardner & Parker for Respondents.

NOURSE, P. J.—The plaintiffs each sued defendants for damages for fraud. The actions were consolidated for trial and were tried by the court without a jury and each plaintiff had a judgment. The defendant Spazier alone prosecutes these appeals upon typewritten transcripts and both appeals are presented on the same record.

The plaintiffs charged a conspiracy on the part of the defendants to induce them to purchase fifty shares each in the Peninsula Title Guarantee Company at the price of $5,000; that defendant Spazier represented that he planned to incorporate a title insurance company which would take over all the plant of the title company and that the stockholders of the title company would take three shares of stock in the new corporation for one held in the title company; that defendant Spazier, "pursuant to and in furtherance of the said conspiracy", made representations to the plaintiffs as to the value of the stock and plant of the title

company which were untrue, and which, if true, would have made the stock of the title company worth $400 a share; that said shares "were and now are worthless and of no value whatever"; and that each plaintiff was therefore damaged in the sum of $5,000. To the Williams complaint the defendant Spazier denied generally and specifically all the allegations relative to value and damages. ▮ To the Orr complaint he answered denying specifically that said shares of stock "were and/or now are worthless and/or of no value whatever". At the close of plaintiff's case counsel for plaintiff Orr stated to the court that he desired to amend his complaint by alleging a different amount of damages, that the measure of damages in cases of this character is the actual value of the property—the difference between the actual value of the property and what it would have been had the representations been true, and that on that basis "the actual value of the property as shown at the present time—the maximum is the book value of approximately $88 a share and the value of which it would have had had the representations been true is something over $400 a share". He then asked leave to amend to conform to the proofs by alleging damages of $16,000 instead of $5,000. Counsel for plaintiff Williams joined in the request and it was granted without objection. In his opening statement counsel for plaintiff Orr in outlining the issues to the court referred to the allegations in his complaint that the shares of stock were of no value and that by reason thereof plaintiff was damaged in the sum of $5,000 and said to the court, "the allegation as to damage is denied by all the defendants". Thereafter he proceeded at great length to prove the actual value of the shares at the time of the transaction and concluded his case with the admission that "the maximum is the book value of approximately $88 a share". At no stage of the proceeding was it contended by any party that the specific denial that the stock was worthless and of no value was a negative pregnant and as such an admission that the stock was of *approximately* no value. Relying upon the explanation by counsel of the issues involved, upon his admission in open court, and upon the conduct of all the parties throughout the trial the court treated the issue as properly joined and found in accordance with the evidence offered by plaintiffs and the admis-

sions of counsel that the stock had an actual value of $88 a share. On this appeal counsel for respondent Orr argues that as to him the answer must be treated as a negative pregnant and that the allegation that the stock was worthless and of no value must be treated as admitted. But the cause proceeded upon the theory that these matters were in issue and the respondent is not permitted to raise the point at this time. (*Eastern Hotel* v. *Miller Bros.*, 101 Cal. App. 241, 244 [281 Pac. 661]; *Lopes* v. *Bruns,* 92 Cal. App. 691, 693 [268 Pac. 928].)

The issues thus framed and tried were that the defendants conspired to defraud the plaintiffs through the sale of corporate stock which was of no value. There is little conflict in the evidence. The defendant Spazier admitted having made some of the representations charged but defended on the ground that they were mere matters of opinion the source of which he disclosed to the purchasers. The plaintiffs admitted that they made no investigation of the properties of the title company though they had frequent opportunities to do so, but both contended that they relied implicitly upon the representations made by appellant. The parties were casual acquaintances, having met on a golf course maintained by a club of which they were members and operated in connection with a new suburban tract in which they had purchased homesites.

The representations of which the plaintiffs complain were (1) that the title company had earned a net profit of $10,000 during the previous twelve months; (2) that it was free of liabilities and had a surplus of $7,500; (3) that its plant had a value of $150,000 and the company could pay a dividend of thirty per cent. The trial court found that the defendant Spazier made said representations positively and as statements of fact, that when made they were known by said Spazier to be false and without any foundation of fact and that at the time he had no information upon the subject of said representations sufficient to warrant the making thereof. It was then found that the actual value of the fifty shares was $4,350 and that had the representations been true these would have had a value of $10,550. Judgment in each case went for the difference in these two valuations.

There is evidence sufficient to sustain the finding that the representations were made as statements of fact at a time when the appellant had no knowledge of or information on the subject sufficient to warrant the making of the representations. There is also evidence to support the finding that appellant did not disclose to either plaintiff the source of his information, although from their own testimony it appears unmistakably that before they entered into the transaction they *knew* that the source of the appellant's information was his co-defendant Warren, an officer in the title company. There is no evidence to support the finding that the appellant knew that the representations were false and without any foundation in fact.

The evidence discloses that the parties were dealing at arm's-length; there was no confidential or fiduciary relation between them. There is no evidence of malice, oppression or bad faith on the part of appellant. The evidence is that he believed all that had been told him about the property, had purchased fifty shares in the title company for $5,000, and had passed his information on to the respondents urging them to buy on the same terms. His carelessness in not seeking the truth of the representations must be conceded. That the representations of the value of the title company were highly excessive must have been evident to all and the negligence of the respondents in failing to make any investigation cannot be denied. The whole set-up discloses unmistakably that the parties were not dealing in terms of shares in the title company but that they were concerned solely with the proposed plan to organize a title insurance company for which purpose the title company was to be used only as a means of organization. The evidence coming from the lips of the respondents is that they were not investing in the stock of the title company, that their interest was in the organization of a *title insurance* company only, and this was their excuse for not investigating the value of the title company. This insurance company was organized in accordance with the agreement but the consolidation failed because of the defalcation of the manager of the title company. The organization of this title insurance company was the primary and sole purpose of all the negotiations. The stock in the title company was being taken solely for the purpose of its use in organizing

the title insurance company. There is not a word of evidence tending to show that any of the parties at any time treated the value of the shares in the title company in terms of dollars and cents, nor that they treated those shares in any other terms than as a means of forming the title insurance company. There is no evidence of any character tending to prove that the appellant at any time investigated the physical plant or the book values of the title company or that he had any knowledge of its value other than the information which had been given him by Warren and which he passed on to the respondents. There is no evidence of any character tending to prove the allegation of a conspiracy on the part of appellant. All the evidence shows unmistakably that he had been deceived by Warren and that he did not know that he had been deceived until long after this transaction was completed. There was no proof of agency on the part of appellant—the evidence is all to the contrary. The undisputed evidence is that when the appellant paid $5,000 for fifty shares of the title company stock he expected to receive fifty shares of treasury stock. The manager of the title company fraudulently sent him fifty shares of his own stock and appropriated the proceeds. When appellant delivered to the title company the two checks which he received from the respondents he expected them to receive treasury stock. The manager fraudulently delivered to them fifty shares each of his own stock and appropriated the proceeds. Knowledge of these frauds did not come to the appellant until after the manager of the title company had decamped with the proceeds of these sales.

In both cases respondents rest their cause on a conspiracy among the several defendants to defraud. Having wholly failed to prove the conspiracy their case against this appellant rests either in wilful deceit within the provisions of sections 1709 and 1710 of the Civil Code or in tort for negligence. Deceit is defined in section 1709 as a wilful act with intent to induce another to alter his position to his injury. Section 1710 contains four subdivisions further defining deceit. These actions could have arisen under the first two only. Subdivision one reads: "The suggestion, as a fact, of that which is not true, by one who does not believe it to be true." Subdivision two reads: "The assertion, as a fact, of that which is not true, by one who has no reasonable

ground for believing it to be true." Here there is no allegation, proof or finding that any of the acts complained of were *wilfully* done with intent to induce respondents to alter their position to their injury. The pertinent finding is that all the representations made by Spazier "were and are false and when made were by said Spazier . . . known to be false and without any foundation in fact; that the defendant M. Spazier made said representations and each of them positively and as statements of fact, and at the time had no information upon the subject of said representations and/or statements sufficient to warrant the making thereof". The finding is a mixture of language found in section 1710 and in subdivision two of section 1572. The latter section defines actual fraud committed *by a party to the contract* as including "the positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true". It will be noted that it is nowhere found that appellant did not have reasonable grounds for believing the statements to be true. The inconsistencies in the finding are apparent though probably not material. A fact is a fact no matter what a person may believe as to its truth or falsity. If a statement is made as of a fact, which statement is known by the maker to be false and the fact is nonexistent, then there is no reasonable ground for believing it to be true. But there is a wide difference between belief as to its truth or falsity and knowledge thereof. A person may believe a statement to be true after a thorough examination thereof whereas another will believe it without examination. Disbelief in the truth of the statement or lack of reasonable ground for believing it are the elements made necessary by these subdivisions of section 1710. What information upon a subject may be sufficient to *warrant* a statement thereon is a purely academic inquiry wholly outside the statutory elements necessary in an action for deceit. The importance of this finding lies in the fact that there is not a word of evidence supporting the first part of the finding—that the appellant knew the statements were false when he made these representations to the respondent. The undisputed and uncontradicted evidence is that the appellant was deceived by Warren, that he first consulted his banker and was given a favorable report of Warren and of the title

company, that the statements which he made to the respondents were based on information given him by Warren, that he purchased from Warren stock in the company of like amount and at the same price as the respondents paid, and that he did not discover the falsity of Warren's representations until long after the transactions herein were completed. The case must rest, therefore, upon the second portion of the finding covering appellant's lack of information. As to this point the evidence is that appellant believed Warren after the recommendation of his banker and that he made no investigation of and had no information upon the financial standing of the title company other than what he had received from Warren. Now, whether these facts were sufficient to warrant the making of the statements or whether they formed reasonable ground for appellant's believing the representations to be true presents two entirely different lines of inquiry. What may be necessary to warrant the making of a statement depends upon all the circumstances under which the statement is made—the confidential or fiduciary relation between the parties, the mental capacity and business acumen of those to whom the statements are made, and the knowledge on the part of the maker as to the manner in which they will be received—whether with or without investigation on the part of those to whom the statements are made. But whether a party has a reasonable ground for believing a statement to be true depends wholly upon the conditions under which he has formed that belief. Thus the fact depends upon the conditions existing prior to the making of the statement and does not depend, as in the other case, upon the circumstances under which, or the parties to whom, it is made. Hence if the appellant believed these statements to be true, and the evidence shows that he did so believe, then the inquiry is, did he lack reasonable ground for believing them? Upon this issue there was no finding.

Here the evidence showed that appellant made numerous misstatements of the financial condition of the title company, but there is no evidence that said misstatements were made (1) wilfully, (2) with intent to deceive, (3) that he did not believe them to be true, or (4) that he had no reasonable ground for believing them to be true. The

respondents were bound to introduce proof not merely of a falsehood but of falsehood and fraud or deceit. The rule is clearly set forth in 2 Pomeroy's Equity Jurisprudence, sections 884 and 885. The rule had been distinctly announced in *Behn* v. *Kemble*, 7 C. B. Rep. (N. S.), 97 Eng. Com. Law Rep. 264; *Addington* v. *Allen*, 11 Wend. (N. Y.) 374, 389; *Zabriskie* v. *Smith*, 13 N. Y. 322, 330 [64 Am. Dec. 551]. When the codes were adopted the rule, as announced in those cases, was adopted in framing the provisions of sections 1708–1710, inclusive. (See Commissioners' Code, 1872.) The decisions of this state are to the same effect. (*Newman* v. *Smith*, 77 Cal. 22, 26 [18 Pac. 791]; *Daly* v. *Quick*, 99 Cal. 179, 185 [33 Pac. 859]; *Filipini* v. *Trobock*, 134 Cal. 441, 443 [62 Pac. 1066, 66 Pac. 587].) In *Camm & Hedges Co.* v. *Bank of Covelo*, 58 Cal. App. Dec. 754 [275 Pac. 828], the majority of this court, in a case involving the same point of law, held that it was error to grant a nonsuit because the jury might *infer* wilful intent to deceive. Justice Sturtevant dissented and pointed out the difference between an action for fraud by a party to the contract and an action of deceit under section 1710 of the Civil Code. The foregoing cases were cited by him as to the necessity of proof of the elements specified in the code section. The cause was transferred to the Supreme Court and, though the reasoning of the dissenting opinion was not adopted, the rule was followed, the Supreme Court saying, "There is no liability, therefore, on the part of these defendants on the theory of breach of contract, nor is there a liability under section 1709 of the Civil Code, for there is no proof of any of the conditions enumerated in section 1710 of the Civil Code." (*Camm & Hedges Co.* v. *Bank of Covelo*, 208 Cal. 246, 250 [280 Pac. 962].)

We are unable to distinguish this case from the rule followed in *Camm & Hedges Co.* v. *Bank of Covelo, supra.* ▮ In that case the majority thought the evidence was sufficient to support an inference that the statements were *known* to be untrue. The reasonableness of the ground for defendants' believing them to be true was not considered. Here the direct evidence is all to the effect that the appellant did not *know* that the statements were untrue at the time they were made. Taking this evidence with the observation that if he did know them to be untrue he was guilty

of a fraud (which might also have been a crime if he had profited by it), we are confronted with the presumption of innocence of crime and a presumption that one is innocent of fraud. (*Truett* v. *Onderdonk,* 120 Cal. 581, 588 [53 Pac. 26] ; *Hoffman* v. *Superior Court,* 151 Cal. 386, 391 [90 Pac. 939] ; *Simonton* v. *Los Angeles Trust & Savings Bank,* 205 Cal. 252, 257 [270 Pac. 672].) Hence it was said in *Ryder* v. *Bamberger,* 172 Cal. 791, 799 [158 Pac. 753, 756], "For if there be two inferences equally reasonable and equally susceptible of being drawn from the proved facts, the one favoring fair dealing and the other favoring corrupt practice, *it is the express duty of court or jury to draw the inference favorable to fair dealing.*" (Emphasis ours.)

The judgments are reversed.

Sturtevant, J., and Spence, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 23, 1933.

Curtis, J., and Preston, J., dissented.