533 P.2d 586

**Charles B. WEBB and Charles W. Webb, d/b/a Green Chaparral Turf Ranch, Plaintiffs-Appellants and Cross-Appellees,**

**v.**

**Roy W. WEBB, d/b/a Green Mesa Turf, and Evelyn A. Webb, his wife, Defendants-Appellees and Cross-Appellants.**

**No. 10055.**

Supreme Court of New Mexico.

Feb. 14, 1975.

Rehearing Denied March 31, 1975.

Threet, Threet, Glass, King & Maxwell, Charles N. Glass, Albuquerque, for plaintiffs-appellants.

Thomas E. Jones, Albuquerque, for defendants-appellees.

## OPINION

FRANK B. ZINN, District Judge.

This cause of action arose from a business dispute largely between two brothers. The plaintiffs, Charles Webb and his son, C. Wayne Webb, sued Roy Webb, the brother of Charles, claiming he owed them $5,218.00 as the balance due them for purchases of grass turf which Roy Webb had taken from time to time during the year 1969. The father and son operated a business in Albuquerque called Green Chaparral Turf Ranch selling the material for instant lawn in the form of rolls of blue grass turf. The defendant Roy Webb operated a similar business in Santa Fe under the name of Green Mesa Turf. Roy Webb denied he owed anything on the plaintiffs' claim contending it was offset or paid.

A counterclaim by Roy Webb asserted that the two brothers had agreed to start a business undertaking and that, with plain-

tiff C. Wayne Webb, had commenced a joint business venture for the production of grass turf, carrying it on in the years 1967, 1968 and 1969. The essentials of the agreement, as he alleges them to have been, were that he was to supply his expertise and his labor in growing, cutting and marketing of the product and to share on a one-third basis the costs and the profits of the enterprise. Charles Webb and C. Wayne Webb had the land to be used and the water source to irrigate it.

Roy Webb contended the operation was successfully developed but that after October, 1969, he was excluded from participation by the plaintiffs. He asked that they account to him for profits earned and for his share of the value of their stock in trade, the developed turf. He asked $34,000.00 as his damages.

The plaintiffs-counterdefendants admitted in their answer to the counterclaim that some sort of agreement had existed between the parties for sharing costs and profits on the grass turf raising and selling operation. At the close of the testimony relating to the counterclaim, they asked leave of court to amend that response to deny the allegation of a partnership or joint venture agreement insofar as C. Wayne Webb was concerned. The court denied this request.

After four days of testimony, an intervening two-day weekend and a day of instructions, argument and deliberation, the jury returned a verdict for the plaintiffs for the full amount of their claim as plead originally, $5,218.00, and for the defendant in the full amount of his counterclaim in the amount of $34,000.00.

Both parties have appealed.

The appellants are the plaintiffs, Charles and C. Wayne Webb; appellee is defendant Roy Webb.

Appellants claim "fundamental error", contending that the trial court, wthout any help from the parties, turned around the whole theory of the case by writing, on its own, the opening instruction to the jury setting out the issues. Whether this departure is reversible error depends on whether appellants waived this by failure to submit a proper instruction or by failing to object to the court's instruction. See Rule 51(1)(i), Rules of Civil Procedure (§ 21–1–1(51)(1)(i), N.M.S.A.1953.)

The court at one point said to both counsel:

"THE COURT: Now, between now and Friday morning, I want you both to get together and to present to me an agreed upon Instruction No. 1, and do you understand the Instruction No. 1?

"MR. JONES: Referring to 3.1 of the UJI?

"THE COURT: The first instruction that we give under the UJI which, in essence, is the statement of your case.

"MR. JONES: Yes, your honor, 3.1.

"THE COURT: 3.1, and I want you to present to me an agreed upon Instruction No. 1, and have your other instructions ready to present because, as I understand it, Mr. King has a couple of witnesses that he intends to call, is that correct?

"MR. KING: Yes, sir."

The record does not disclose that the collaboration suggested by the court on the "issues" instruction took place. Counsel for plaintiff submitted no issues instruction.

Counsel for the defendant and counterclaimant submitted a requested instruction along the lines of U.J.I. 3.2 as defendant's requested Instruction No. 1. The court's instruction and the one submitted by defendant were substantially the same insofar as stating the issues on the plaintiff's cause of action against defendant. The court wrote its own statement of the issues on the counterclaim, adopting generally the language submitted by defendant.

Counsel for plaintiffs made no objection to the court's Instruction No. 1, the issues instruction. Counsel for defendant did make an objection to the court's Instruc-

tion No. 1. The silence of plaintiff's counsel as well as the stated objection by defendant's counsel were, practically speaking, of the same effect. The judge was not there. What defendant's counsel said was not heard, and if plaintiff's counsel had spoken to the point, his remarks would merely have been recorded, not considered by the judge.

Rule 51 of the Rules of Civil Procedure, supra, explains the mechanics and requirements of the court and the parties in getting the jury instructed on the law of the case.

Subparagraph (i) of that rule reads: "For the preservation of any error in the charge, objection must be made to any instruction given, whether in U.J.I. or not; or, in case of a failure to instruct on any point of law, a correct instruction must be tendered, before retirement of the jury. *Reasonable opportunity shall be afforded counsel so to object or tender instructions.*" (Emphasis supplied.)

What transpired in regard to the opportunity to object was the following:

"THE COURT: All right. Let the record reflect here that we are continuing this case on Monday, April 9th, and that at this point, both the plaintiff and defendant are being given the opportunity before the matter is submitted to the jury to read their objections to any of the instructions into the record. Here are the instructions and you notify me when you get through.

"MR. JONES: Let the record reflect that the court is not in attendance at the time of reading the objections to the instructions into the record as required by the Supreme Court."

During the judge's absence, counsel for each party dictated a great number of objections as to instruction proposed for use by the court and to the refusal to give others submitted. The judge then reappeared and the record continues:

"THE COURT: Let the record reflect that the Court has afford (sic) to both attorneys the opportunity to read their objections to the instructions into the record, that Mr. Jones requested that the Court be present during this period of time. The Court has already ruled on the Instructions, either allowed them or disallowed them, and the Court does not feel that it was necessary to be present during the period of time that the objections to the Instructions were being read by the attorneys."

Affording counsel reasonable opportunity to object or tender instructions is not a mere ceremonial matter. It should be a cerebral undertaking on the part of the court.

In this case, the record indicates the copies of the proposed instructions of the court were handed to counsel and then the judge departed. Counsel were left to state, ceremonially and futilely, their objections to the proposed instructions to the court reporter.

Prior to the adoption of the Uniform Jury Instructions and the amendments to Rule 51 which accompanied them, the method of settling jury instructions and the manner of recording the process varied from judge to judge. This variety was sought to be ended and some uniformity obtained by the adoption of the amended rule which is cited above. Apparently, old habits are not easily changed by rules. Hopefully, they will be changed by this opinion.

The old practice of counsel speaking to the record, and not to the court, in a shotgun approach wherein every imaginable objection was stated, hoping that by some chance the target of reversible error might be struck, should have also ended with the adoption of the amendments to Rule 51.

The statements made by this court in City of Albuquerque v. Ackerman, 82 N.M. 360, 365, 482 P.2d 63, 68 (1971), is as apt a comment as we could make again:

"We have stated numerous times that the reason for requiring proper objections to erroneous instructions is to draw the court's attention to errors in time to correct them. Such is the purpose of Rule 51(i). It is the policy of these principles to avoid error, concluding cases at the trial court level free from error. The time of stating objections to instructions is a vital stage of the trial, affording, as it does, the last opportunity for the trial court to correct errors. How, we ask, can these objectives be accomplished in the absence of the trial judge? Obviously they cannot. We know of no phase of the trial proceedings when the presence of the trial judge is more vital. He had might as well be absent during reception of evidence."

The failure of the court to afford reasonable opportunity to object or to tender a correct instruction was error. This error, in this case, protects the parties from any failure to preserve error by proper objection or tender of a correct instruction.

Does the error require reversal and remand for a new trial? An examination of the instructions given is required to answer the question.

The standard for the reviewing court has been stated, in essence:

"  *  *  *  instructions must be read and considered together,  *  *  *  and if, when so considered, they fairly present the issues and the law applicable thereto, they are sufficient  *  *  *." Tapia v. Panhandle Steel Erectors Company, 78 N.M. 86, 91, 428 P.2d 625, 630 (1967).

See also Williams v. Vandenhoven, 82 N. M. 352, 482 P.2d 55 (1971).

Appellants contend the issues were not fairly presented but, to the contrary, were misstated by the court, were not founded upon the appellant's theory and misled the jury in considering the facts of the case.

A reading of the issues instruction, the court's No. 1 Instruction, which was an effort to follow the guidelines of U.J.I. 3.1 or 3.2 is the starting point. The instructions for use, following U.J.I. 3.1 which we believe necessary for the correct use of the U.J.I. are quoted for emphasis. U.J.I. page 18.

"This is the most important single instruction in the lawsuit, and court and counsel should give particular attention to it  *  *  *.

"Since this instruction is the post to which all of the remaining instructions are tied, extreme care should be used when any departure is made from it  *  *  *."

It is in this instruction that the court should fairly present the issues, following it with the instructions containing the law applicable to those issues.

The court's issue instruction was complained of by appellants in several aspects. The first complaint is that it changed the counterclaim issues from an action claiming a partnership and seeking an accounting into a claim for an interest in land. The language complained of was the following:

"The defendant claims in his counterclaim that he sustained damages and that the proximate cause thereof was the failure of the plaintiffs to pay the defendant a one-third gross interest in the sod grown  *  *  *."

While no paragon of clarity, the phrase, together with the verdict forms, guided the jury so that they were not misled into a verdict for a measure of sod instead of money.

Another portion of the same instruction is complained of more vigorously

by appellant. It is that part wherein the court told the jury:

"The plaintiffs deny the defendant's counterclaim and assert the following defenses to the counterclaim:

"(1) There was never an agreement or arrangement between the parties.

"(2) No partnership existed.

"(3) No joint venture existed.

"The plaintiffs have the burden of proving their defenses to the counterclaim."

Here it is quite evident that the court mistakenly imposed upon the plaintiffs an improper burden of proof. In an apparent effort to conform U.J.I. 3.2, a negligence instruction, to convey the issues in a suit for an accounting, the court erred. This instruction was clearly misleading. This alone, had the error been preserved by proper objection, would be enough to require reversal. Since, in this case, no reasonable opportunity was afforded counsel to alert the mind of the court to the error in the instruction, the error was preserved.

■ A further failure on the part of the court was the omission of an instruction on damages. No guidance was given the jury in weighing the claim of the plaintiffs, or the counterclaim of the defendant, as to how to arrive at an amount should they find liability. The court gave the standard precautionary instruction of UJI 14.1 but went no further. Neither party requested a damage instruction. In this case, for the reasons previously stated, this omission did not waive the error.

In any event, for the court to submit the parties' claims with no guidance in the form of a damage instruction to advise the jury how to calculate the damages, if it should have found they were to be awarded, left the instructions, as a whole, incomplete and misleading.

For the several reasons noted, the cause must be reversed and remanded for a new trial on both the complaint and the counterclaim.

It is so ordered.

STEPHENSON and MONTOYA, JJ., concur.