[No. 1073-3.   Division Three.   July 30, 1975.]

RALPH L. CHAPMAN, *Respondent*, v. MARKETING UNLIMITED, INC., ET AL, *Appellants.*

*David H. Putney* (of *Halverson, Applegate, McDonald, Bond, Grahn, Wiehl & Almon*), for appellants.

*John S. Moore* (of *Velikanje, Moore & Shore*), for respondent.

WILLIS, J.*—Defendant appeals from an award of damages to plaintiff for negligent misrepresentation.

In February 1971 plaintiff was and had been employed as the Northwest representative of Browning Arms Company at a salary of $1,053.66 a month. He was then offered employment by the defendant, to be in charge of a new department devoted to the sale of recreational equipment, at a salary of $1,250 per month, to be increased to $1,400 per month in November 1971. He was also told by defendant that if he accepted such employment at the end of 1 year therein he would be entitled to purchase 10,000 shares of the capital stock of the defendant corporation for $0.75 per share. Defendant also advised him that the said stock was then worth $2 per share.

The plaintiff accepted the defendant's offer of employment, gave up his position with Browning Arms, and commenced working for the defendant on March 1, 1971. On June 28, 1971, the defendant, expressing some dissatisfaction with plaintiff's performance, terminated his employment.

The plaintiff then sought reemployment with Browning Arms, but found it unavailable. He drew $110 in unemployment compensation, earned $1,320 over an 11-week period in a sporting goods store, and then on October 11, 1971, he was appointed an agent for State Farm Insurance Company, earning in such employment $1,319.47 in 1971, $5,988.81 in 1972 and $5,200 in 1973, until November 1, when he became an independent insurance agent.

The plaintiff instituted this action, claiming fraud and negligent misrepresentation in that the Marketing Unlimited stock in February 1971 was not worth $2 a share as then represented to him by the defendant. He also sought damages for breach of contract. At the end of plaintiff's

---

*Judge Robert J. Willis is serving as a judge pro tempore of the Court of Appeals pursuant to Laws of 1973, ch. 114.

case, the trial court ruled that fraud had not been proved, and that the defendant had not breached the contract, as the employment was terminable at will. It did, however, allow the case to proceed upon the theory of negligent misrepresentation, particularly in view of the plaintiff's testimony that one of the things "that really swayed" him into accepting the employment with defendant was the privilege, after 1 year's employment, to exercise an option to purchase stock, said to be worth $2 for $0.75 per share. The evidence showed, and the court found, that the stock in February 1971, was not worth $2 per share.

The trial court granted judgment for the plaintiff in the sum of $14,778.84, which represents the difference in the plaintiff's earnings for the period of March 1, 1971, to November 1, 1973, of $33,717.12, had he remained at Browning Arms, and his actual earnings of $18,938.28.

The defendant makes the initial contention that since the stock purchase option offered the plaintiff was to come into effect only after 1 year's successful employment, and since the trial court ruled that the plaintiff was lawfully and properly discharged from the employment within 4 months, the option never became viable and thus could not be the basis for an action for damages for negligent misrepresentation. Such contention, however, overlooks the fact, as testified by the plaintiff and found by the court, that the misrepresentation was instrumental in causing the plaintiff to give up his employment with Browning Arms and to suffer the financial losses that followed. We agree with the trial court that "the proper measure of damages is what he lost by being induced to come to Yakima based upon a representation which was not correct."

The principal contention of the defendant is that the court applied an incorrect measure of damages, urging that it should have used the "benefit of the bargain" rule (the difference between what the plaintiff received and what he would have received if the representation had been true) or the "out of pocket" standard (the difference between the

amount paid or value of the thing given in exchange and the actual value.)

The defendant contends that the Washington courts have held that the measure of damages in misrepresentation cases is the "benefit of the bargain" rule as modified to allow for special damages, citing *McInnis & Co. v. Western Tractor & Equip. Co.*, 63 Wn.2d 652, 388 P.2d 562 (1964), and *Salter v. Heiser*, 39 Wn.2d 826, 239 P.2d 327 (1951). Both of those actions were fraud cases. In *McInnis*, where used machinery sold to the plaintiff was represented as new, the "benefit of the bargain" rule was applied, but the court also determined that the plaintiff's expenses in a trip to Okinawa to investigate the condition of the machinery also should be included if "proximately caused by the defendant's fraud."

In *Salter*, the court held that the plaintiff was entitled to recover damages for losses proximately caused by the defendant's fraud. The decision also stated, at page 832:

> While this court has applied the "benefit of bargain" measure of damages [citations omitted], it has not been suggested by this court that it is the exclusive measure of damages that may be applied.
>
> . . .
> . . . Where he seeks to recover damages not inherent in the "benefit of bargain" rule, he will be awarded damages for all losses proximately caused by defendant's fraud.

The defendant, urging that the plaintiff should recover no damages resulting from a change of employment, quotes the following language from *Salter*, at page 834:

> The risk of operating at a loss and the giving up of other employment are incidents of entering into a business venture.

We believe, however, that the quoted language is modified by the statement that immediately follows, namely:

> Where the plaintiff can be awarded the difference between the value of what he would have received had the representations been true and the actual value of what he received, he is adequately compensated.

The "benefit of bargain" rule is more properly applicable and more easily applied to a case involving the sale and purchase of property, where the difference between the represented value and the actual value can be more readily determined and demonstrated. In the case at bar, however, where the plaintiff bought no property, but actually suffered damage as a result of the misrepresentation, he is entitled to a recovery for the losses proximately so caused.

In *DeNike v. Mowery*, 69 Wn.2d 357, 358, 418 P.2d 1010, 422 P.2d 328 (1966), the court stated:

> The purpose of awarding nonpunitive, pecuniary compensation to the injured party is to repair his injury, or to make him whole again as nearly as that may be done by an award of money.

In addition, the rule is no different in a case involving a negligent misrepresentation than where the injury is caused by actionable fraud. Thus, in *Brown v. Underwriters at Lloyd's*, 53 Wn.2d 142, 332 P.2d 228 (1958), where the court found the misrepresentation to be negligent but not fraudulent, the court said at page 150:

> When relied upon by the purchaser to his damage, false statements made to induce a sale, although innocently made and believed by the speaker to be true, are as actionable as if known to be false and made with intent to deceive. But the gist of the action is negligence and not fraud or deceit.

The defendant has cited three out-of-state cases which involve employment contracts. The first is *Andolsun v. Berlitz Schools of Languages of America, Inc.*, 196 A.2d 926 (D.C. Cir. 1964), where the plaintiff was given a 1-year contract of employment as an interpreter-translator, beginning June 1, 1962. Before being so employed, the plaintiff had been told by the defendant that his being an alien would not affect his ability to hold the job, but in July 1962, he was discharged because he was an alien. The decision is silent as to what losses were so caused or what damages were sought, but the court did say that damages

should be confined to the 1-year employment period called for by the contract.

The second decision cited by the defendant is *Espaillat v. Berlitz Schools of Languages of America, Inc.*, 383 F.2d 220 (D.C. Cir. 1967). In that case the plaintiff entered into a contract to work for the defendant for $600 per month. Before entering into the contract, the plaintiff inquired if her status as an alien would interfere with the proposed employment and was told by the defendant, untruthfully and knowingly, that it would not. Some 2 months later, army authorities required the defendant to discharge the plaintiff when they learned she was an alien.

The court said at page 222:

> The appellate court had observed correctly that basically in tort actions "for fraud or fraudulent inducement to enter into a contract for the sale or exchange of property," the perpetrator of a fraud is liable to respond in such damages as naturally and proximately resulted from the fraud, and the "proximate result" rule "should be employed in a flexible manner."

The court continued:

> It is our view, however, that a measurement merely in terms of the value of real or personal property sold or exchanged fails of applicability in the requisite "flexible manner" when a contract for personal services has been induced by fraud.

At page 223, the court also said:

> Although its [the intermediate appellate court's] opinion discussed the "benefit of the bargain" rule and the "out of pocket" standard, neither by itself will here provide explicitly an apt gauge for recovery where suit was brought after the contract period had expired and when all the facts as to appellant's earnings and loss had been known.

(Footnote omitted.) At page 224, the court stated:

> To be considered also in fixing a basis for recovery are such expenses as were necessarily incurred as the appellant sought employment after the termination of her contract.

. . . recovery will include "such damages as naturally and proximately resulted from the fraud."

The third case cited by the defendant is *Elizaga v. Kaiser Foundation Hosp., Inc.*, 259 Ore. 542, 487 P.2d 870 (1971). That was an action in which the defendant offered the plaintiff a position in a preceptorship program to start on July 1, 1969, although it knew that the program probably would not be extended beyond June 30, 1969. Plaintiff came from his home in the Philippines to accept the position. When the Board of Medical Examiners advised the defendant that its approval of the program would end on June 30, 1969, the defendant notified the plaintiff that he could not be hired. He eventually found other employment at about half the salary.

The court held that both the "benefit of bargain" rule and the "out of pocket" rule were inapplicable in such a state of facts, and allowed damages for the difference between what the plaintiff earned and what he would have earned under the contract.

In the instant case the plaintiff, Chapman, has sustained a loss which is not measurable by either the "benefit of bargain" or the "out of pocket" rule. He gave up employment with Browning Arms to come to Yakima and accept a position with the defendant. He was discharged within 4 months. This resulted in a substantial reduction in his income for approximately the next 3 years. We believe that this situation falls within the ambit of the rule expressed in *Salter v. Heiser, supra,* that where the "benefit of bargain" and "out of pocket" rules are inappropriate, the plaintiff will be awarded damages for all losses proximately caused by defendant's fraud (or, in this case, by defendant's negligent misrepresentation).

We hold that the trial court was justified, under the evidence, in using as a means of determining the extent of the plaintiff's damage, the difference between what he actually earned and what his earnings would have been had he continued in the employ of Browning Arms.

We believe, however, that the court was too liberal in allowing such damages for a period that extended from March 1, 1971, the start of the employment, to November 1, 1973. It will be remembered that the defendant paid the plaintiff for 4 months, or until July 1, 1971. He then drew unemployment compensation for about 3 weeks, after which he worked in a sporting goods store for 11 weeks, and then accepted employment as an agent with State Farm Insurance Company on October 11, 1971.

As the plaintiff says in his brief, he was entitled to recover the amount of his lost income *for a reasonable period of time.* After his discharge from defendant's employment on July 1, 1971, the trial court allowed him damages for lost income for the next 28 months. This, in effect, as contended by the defendant, was requiring the defendant "to underwrite his retraining as an insurance agent for a period of almost 2½ years." While there is no definite standard in the law to measure the length of a period to be allowed a person, such as this plaintiff, to reestablish himself in another employment, we believe that the 28 months allowed the plaintiff by the trial court, and thus charged against the defendant, was too long a time to accord to the plaintiff a reasonable opportunity to accomplish such purpose. He first studied for the insurance examination and then commenced his employment with State Farm Insurance Company as an insurance agent on October 11, 1971, receiving as compensation $600 per month, which he described as constituting $480 as wages and $120 as expenses. He continued in that employment until November 1, 1973, when he became, as he testified, "an independent contractor or agent."

The record supplies no information concerning the time necessary to adequately train an insurance agent. We are of the opinion, however, that the period of over 24½ months allowed the plaintiff to become "an independent contractor or agent," at the expense of the defendant, is too long. We believe that a year, or approximately a year, figured from the time that he began his insurance studies, which takes

us to October 1, 1972, is a reasonable time to allow the plaintiff for his readjustment.

We therefore allow the plaintiff a judgment against the defendant for the difference between his income from March 1, 1971, and October 1, 1972, and what he would have earned in that period had he remained at Browning Arms, figured as follows:

| | | |
|---|---|---|
| 19 months at Browning Arms at $1,053.66 per month ......... | | $20,019.54 |
| 4 months at Marketing Unlimited at $1,250 per month ........... | $5,000.00 | |
| 3 weeks unemployment insurance.. | 110.00 | |
| 11 weeks at Jed's ................. | 1,320.00 | |
| 10/11 to 12/31/71 at State Farm Ins. . | 1,319.47 | |
| 1/1 to 10/1/72 at State Farm Ins. (9/12ths of $5,988.81) ......... | 4,491.61 | 12,241.08 |
| | | $ 7,778.46 |

The judgment of the trial court is reduced to $7,778.46. Defendant-appellant is awarded his costs on appeal.

McINTURFF, C.J., and GREEN, J., concur.

Petition for rehearing denied Septmber 8, 1975.