764 P.2d 1307

**FIRST INTERSTATE BANK OF GALLUP, Petitioner,**

v.

**Cal W. FOUTZ and Keith L. Foutz, Respondents.**

**No. 17672.**

Supreme Court of New Mexico.

Nov. 21, 1988.

Keleher & McLeod, Arthur O. Beach, Albuquerque, for petitioner.

H. Vern Payne, Stacey A. Johnson, Albuquerque, Grant L. Foutz, Gallup, for respondents.

## OPINION

STOWERS, Justice.

We have granted certiorari to consider whether the trial court correctly instructed the jury on the measure of damages in this action for negligent misrepresentation.

Respondents-plaintiffs, Cal and Keith Foutz, brought this case against petitioner-defendant, First Interstate Bank of Gallup (FIBG), for fraud and negligent misrepresentation in connection with a transaction involving the respondents, FIBG, and a nonparty, Robert Berni. The respondents claimed that they were fraudulently or negligently induced to enter into a continuing guaranty and a hypothecation agreement

by an officer of FIBG, and sought rescission of these contracts. The trial court granted petitioner's motion for a directed verdict on the fraud claim and on some of the claims of negligent misrepresentation, but denied the motion on the claim of negligent misrepresentation of the value of Berni's assets. The jury returned a verdict in the amount of $75,000 for respondents and petitioner appealed. The court of appeals in a 2 to 1 decision affirmed the trial court. We agree with the dissenting opinion of the court of appeals and reverse and remand to the trial court to enter judgment for petitioner.

The basic facts are not in dispute and have been set out more fully in the court of appeals' opinion. In 1981 the Foutzes entered into a business transaction with Berni. Each of the brothers contributed $50,000 in cash to begin two businesses with Berni known as Buddy's Used Cars and B & F Auto Service and Wrecker Service. Berni contributed a wrecker service, including a wrecker's license and various car servicing equipment. The two businesses were managed and operated by Berni. Other than a written partnership resolution, there were no documents evidencing any contracts between the Foutzes and Berni. Thereafter, they had several disagreements about the operation of the businesses. In August 1981, Berni executed a $100,000 promissory note to Keith and Cal Foutz to reimburse them for their partnership investment. Berni made some payments on the note, but by December 1982 the note was past due.

In December 1982 or January 1983, the exact date is unclear in the record and briefs, Cal Foutz was told by an employee of FIBG that he was delinquent on a note. Since Cal was unaware of a past due note, he spoke with Kenneth Agee, who handled his accounts at FIBG and who was then its vice-president. Agee informed Cal that in September 1981 FIBG had extended Berni a $50,000 unsecured loan and in conjunction with this loan Berni had supplied FIBG with the partnership resolution. At the time of Cal's meeting with Agee, the $50,000 loan was past due and FIBG was looking to the Foutzes to make the payments.

■ After the initial meeting with Cal, another meeting was held with both Foutzes and Agee. FIBG agreed to loan Berni an additional $100,000 to pay the Foutzes' promissory note and, thereby, increase Berni's indebtedness to $163,703 (the other $63,703 was used to consolidate all of Berni's outstanding loans with FIBG). The Foutzes agreed to put the $100,000 in a certificate of deposit (CD) at FIBG. The Foutzes also signed a continuing guaranty of this loan to Berni up to the amount of $150,000 as well as a hypothecation agreement pledging their CD as security for the loan to Berni (a hypothecation agreement gives a creditor a right over personal property belonging to another and the power to take or sell that property to satisfy the creditor's claim). In the event Berni defaulted on his loan with FIBG, the hypothecation contract provided that the CD could be attached to satisfy Berni's indebtedness. FIBG also took a security interest in all the assets of Buddy's Used Cars and B & F Auto Service and Wrecker Service, and a security interest in Berni's residence and some of his personalty. As a result of this transaction, the Foutzes obtained a return on their $100,000 partnership investment in the form of quarterly interest payments from the CD and Berni's loans were consolidated and increased to $163,703.

The Foutzes received three quarterly interest payments on the CD for $7,200. Berni, however, defaulted on his loan. By a letter dated January 11, 1984, FIBG notified Cal that the bank had repossessed all collateral available to it under the loan agreement with Berni, and under the hypothecation agreement and continuing guaranty, it exercised its right to take the CD. At the time FIBG took the CD and applied it against the outstanding loan balance, there was a remaining balance in the amount of $21,741.08, which FIBG was expecting to satisfy out of the contract receivables from Buddy's Used Cars.

■ At issue in this case is jury instruction No. 19 given by the trial court on the measure of damages available to respon-

dents in an action for negligent misrepresentation. That instruction, in relevant part, stated:

> If you should decide in favor of the [respondents] on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate them for any of the following elements of damages proved by the [respondents] to have resulted from the negligent misrepresentation as claimed: The value of the loss of the Certificate of Deposit. The value of the loss of interest on the Certificate of Deposit.

FIBG argues that this instruction is an improper statement of the damages under a theory of negligent misrepresentation because it instructs on the benefit of the bargain and not on actual out-of-pocket losses. The majority of the court of appeals did not agree with FIBG.

The court of appeals stated that the tort of negligent misrepresentation as articulated in the Restatement (Second) of Torts Section 552 (1977) was adopted in New Mexico in *Stotlar v. Hester*, 92 N.M. 26, 582 P.2d 403 (Ct.App.), *cert. denied*, 92 N.M. 180, 585 P.2d 324 (1978). *Accord Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 106 N.M. 757, 761–62, 750 P.2d 118, 122–23 (1988). Comments (a) and (b) to Section 552 indicate that damages for negligent misrepresentation are determined by out-of-pocket loss or reliance damages. That measure of damages is set forth in Section 552B and provides:

**Damages for Negligent Misrepresentation**

(1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including

> (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

> (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.

(2) The damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.

Restatement (Second) of Torts § 552B (1977). Because New Mexico follows the tort of negligent misrepresentation as set forth in the Restatement, it is not unreasonable to conclude that we would also follow the damages as set forth therein. Using 552B(1)(a) as the proper measure of damages, the court of appeals reasoned that, in the present case, the out-of-pocket loss was equal to the difference between the amount the Foutzes gave and the amount they received in the secured transaction with FIBG. In other words, the difference between what the Foutzes gave, a $100,000 CD plus unpaid interest, and what they received, nothing, was $100,000 plus interest. The majority opinion concluded that because the Foutzes gave the $100,000 CD and received nothing the value of the CD plus interest represented their out-of-pocket loss and instruction No. 19 correctly stated that measure of damages.

Jury instructions must state the law correctly and be based on the evidence. *Pittard v. Four Seasons Motor Inn, Inc.*, 101 N.M. 723, 727, 688 P.2d 333, 337 (Ct.App.), *cert. quashed*, 101 N.M. 555, 685 P.2d 963 (1984). "All instructions must be read together and, if they fairly present the issues and the applicable law, they are sufficient." *Id.* Reversal is warranted where the party complaining of faulty instructions shows evidence of prejudice. *Jewell v. Seidenberg*, 82 N.M. 120, 124, 477 P.2d 296, 300 (1970).

The dissent in the court of appeals' opinion agreed that the proper measure of damages in the present case is the out-of-pocket loss and not the benefit of the bargain, but disagreed that instruction No. 19 corresponds to that out-of-pocket loss or that respondents' proof established any out-of-pocket losses. Thus, the trial court's instruction could be considered a correct statement of damages if respondents' argument was accepted that what they gave in the transaction with FIBG was the $100,000 CD; otherwise jury instruction No. 19 instructed on the benefit of the bargain, an

inapplicable measure of damages in negligent misrepresentation.

We agree with the dissent that the instruction was on the benefit of the bargain and not on any out-of-pocket losses. At the time of the transaction with FIBG, the Foutzes had a past due $100,000 unsecured promissory note from Berni. No principal payments and only interest payments totalling $3,400 had been made on the note even though the Foutzes should have received $40,000 by then. FIBG had four outstanding loans to Berni with balances totalling $63,703. These loans were secured by personalty and Berni's mobile home. Berni wanted to consolidate them and in exchange was willing to give the bank a security interest in all of his business assets and in his personal residence. To refinance Berni's loans, the bank gave the Foutzes a $100,000 CD that retired the unsecured promissory note from Berni. In exchange for the CD, the Foutzes agreed to hypothecate that CD as security for the Berni loan of $163,703, and also to sign a continuing guaranty of the Berni loan up to $150,000.

The dissent correctly pointed out that the Foutzes would not have had the CD had FIBG not advanced that amount of money to Berni. FIBG certainly did not advance without any expectation of security or collateral in return that additional $100,000 to Berni so that he could pay off the Foutzes' promissory note. Instruction No. 19 directed the jury to award respondents the value of the CD, plus the value of the loss of the interest on the CD, if the jury found for respondents. The instruction allowed the Foutzes to recover the benefit of their bargain with FIBG and actually placed them in a better position than they occupied before entering into the transaction. As a result, the jury verdict in favor of respondents, which was for $75,000, represented the CD less 25 percent fault apportioned to respondents and Berni. Thus, the Foutzes recovered the benefit of their bargain, not their out-of-pocket losses.

The damages the Foutzes could have recovered under a theory of negligent misrepresentation, as set out in the Restatement, was the consideration they gave for entering into the transaction minus any value they received from that transaction, plus any pecuniary loss proximately resulting from reliance on the misrepresentation. The loss of the CD does not represent the difference between the value of what was received and its purchase price. Nor does it represent any other pecuniary loss as a result of reliance on the misrepresentation. It cannot be a pecuniary loss because the Foutzes would not have had the CD if they had not entered into the transaction with the bank, and, agreed that the CD could be attached if Berni defaulted. The Foutzes failed to present substantial evidence of any out-of-pocket damages they sustained as a result of their transaction with FIBG.

The verdict of the district court is reversed and judgment is entered in favor of petitioner.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and RANSOM, J., concur.

WALTERS, J., specially concurs.

SOSA, Senior Justice, dissents.

WALTERS, Justice (specially concurring).

I adopt Judge Bivins's dissent, attached as my addendum hereto, as my special concurrence in this matter.

## ADDENDUM

BIVINS, Judge (dissenting).

I am unable to agree with the majority as to the instruction issue. Because that issue is dispositive and, in my opinion, requires reversal and remand for dismissal, I do not reach the second issue, sufficiency of the evidence to support a verdict of negligent misrepresentation.

The trial court instructed the jury, if it found defendant liable, to award plaintiffs the value of the certificate of deposit and the value of the loss of interest on the certificate of deposit. The trial court's instruction No. 19 is identical to plaintiffs' requested instruction No. 1, except for the

substitution of "negligent misrepresentation" for "fraudulent misrepresentation."

While I agree with the majority as to the proper measure of damages for negligent misrepresentation, as set forth in 3 Restatement (Second) of Torts, Section 552B (1977), I disagree the trial court's instruction No. 19 corresponds to that measure, or that plaintiffs' proof establishes any out-of-pocket loss. *See Pittard v. Four Seasons Motor Inn, Inc.*, 101 N.M. 723, 688 P.2d 333 (Ct.App.1984) (instructions must correctly state the law and be based on the evidence).

For clarity, I will set out the full text of Restatement, *supra*, Section 552B followed by the trial court's instruction No. 19:

Section 552B provides:

**Damages for Negligent Misrepresentation**

(1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including

(a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

(b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation. .

(2) *the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.* [Emphasis added.]

Instruction No. 19 provides in pertinent part:

If you should decide in favor of the Plaintiff [sic] on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate them for any of the following elements of damages proved by the Plaintiffs to have resulted from the negligent misrepresentation as claimed:

The value of the loss of the Certificates [sic] of Deposit. The value of the loss of interest on the Certificates [sic] of Deposit.

As the comments to Restatement, *supra*, Section 552B indicate, out-of-pocket loss is the proper measure, not benefit of the contract as allowed for fraudulent misrepresentation. This court contrasted the two causes of action in *State ex rel. Nichols v. Safeco Insurance Co.*, 100 N.M. 440, 443, 671 P.2d 1151, 1154 (Ct.App.1983), and, in a footnote, pointed out that the liability for negligent misrepresentation is more restricted than for fraudulent misrepresentation. As stated in pertinent part in Restatement, *supra*, comment b to Section 552B:

The considerations of policy that have led the courts to compensate the plaintiff for the loss of his bargain in order to make the deception of a deliberate defrauder unprofitable to him, do not apply when the defendant has had honest intentions but has merely failed to exercise reasonable care in what he says or does.

Thus, the correct measure of damages is the difference between what plaintiffs gave and what they received. *See Williams v. Spazier*, 21 P.2d 470 (Cal.App.1933), subsequent opinion, 134 Cal.App. 340, 25 P.2d 851 (1933); *Chapman v. Marketing Unlimited, Inc.*, 14 Wash.App. 34, 539 P.2d 107 (1975). The trial court's instruction No. 19 can be considered a correct statement of this measure only if we accept plaintiffs' argument that what they gave in the transaction was the $100,000 certificate of deposit, otherwise, it instructs on the benefit of the bargain, a measure of damages not applicable in negligent misrepresentation cases.

The majority assert that since plaintiffs gave the $100,000 certificate of deposit and received nothing, the value of the certificate of deposit, plus interest, represents their "out-of-pocket loss," and, thus, conclude that the trial court's instruction No. 19 correctly states the measure of damages.

First, the majority misconstrue the transaction and what plaintiffs had to give. Before the three-way transaction occurred, all plaintiffs had was a $100,000 unsecured promissory note from Berni that was past due and on which they had received only

$3,400 interest. Funding for the $100,000 certificate of deposit given to plaintiffs by Berni to retire the promissory note came from the bank as a direct result of the bank refinancing Berni. The bank advanced the additional $100,000 used to purchase the certificate of deposit. In exchange for the certificate of deposit, plaintiffs agreed to hypothecate that certificate of deposit as security for the Berni loan and also to sign a continuing guaranty up to $150,000. Thus, by holding that plaintiffs gave up the $100,000 and got nothing, the majority have erroneously ignored the true nature of the transaction.

Second, given the fact that plaintiffs only had the promissory note, instruction No. 19 does not correctly state the measure of damages. Had there been proof of damages, the trial court should have instructed that if plaintiffs prevailed, their damages would be the difference between the value of their $100,000 promissory note as of the date of the transaction and its value when Berni defaulted to the bank, plus any pecuniary loss otherwise suffered as a consequence of plaintiffs' reliance on defendant's misrepresentation. Defendant requested an instruction along these lines but it was refused. Because no such evidence was offered as to out-of-pocket damages, the case should be remanded for dismissal.

In order to accept the majority's reasoning, it is necessary to separate the transaction into its components, isolate each component and then deny the relationship of each component to the others. When this is done, one might say that plaintiffs gave up the $100,000 certificate of deposit because at one point in time they had that certificate of deposit. This approach, however, ignores the fact that plaintiffs would not have had the certificate of deposit had defendant not advanced the additional $100,000 to Berni necessary to purchase that certificate of deposit. One would have to believe that defendant, with $63,703 in delinquent loans from Berni, simply decided to advance Berni an additional $100,000 so he could pay off plaintiffs' promissory note, with no expectation of further security in return. Incredulously, this is what plaintiffs argue on appeal. Plaintiffs cite

to nothing in the record to support their position. In fact, plaintiffs suggest that since defendant believed Berni had $300,000 in assets, it probably would have loaned him the additional $100,000 without the continuing guaranty or hypothecation. The issues framed will not support plaintiffs' argument. The jury only decided whether defendant negligently misrepresented Berni's assets. The nature of the transaction was not even an issue.

Plaintiffs also confuse the nature of the case as presented to the jury. They argue in their brief that instruction No. 19 properly restored plaintiffs to the "status quo ante," that is, their status before the transaction giving rise to their suit. This is incorrect. First, plaintiffs' claim for rescission based on fraudulent misrepresentation was dismissed at the end of their case-in-chief. The trial court instructed the jury only as to one of plaintiffs' claims for damages based on negligent misrepresentation. Plaintiffs objected to the issue instruction, but have taken no appeal from either the dismissal of their rescission count or the instruction given. Moreover, as the majority correctly note, the case could not have been submitted to a jury on a rescission theory. "Rescission is an equitable remedy, so it is tried by the court without a jury." Committee Comment to SCRA 1986, 13–814.

Second, instruction No. 19 does not in any way attempt to restore the status quo ante. It directs the jury to award plaintiffs the value of the certificate of deposit, plus the value of the loss of interest on the certificate of deposit, if they find in favor of plaintiffs. As a result, plaintiffs recovered $75,000, which represents the certificate of deposit, less 25% fault apportioned to plaintiffs and Berni. The net effect is that there has been no rescission. Plaintiffs have an award of $75,000, but are still liable on the continuing guaranty. Thus, plaintiffs have the benefit of the bargain, not their out-of-pocket loss.

Citing to *Webb v. Webb*, 87 N.M. 353, 533 P.2d 586 (1975), the majority suggest that, when read as a whole, the trial court's instructions adequately and properly in-

structed the jury on defendant's theory of the case. This is incorrect. There was only one instruction on the measure of damages and that was instruction No. 19. The majority hint that defendant's theory of the case, that plaintiffs have not been damaged because they had not been able to collect on the promissory note, as set forth in the statement of issues instruction, can be considered along with instruction No. 19. The issues instruction only contains the parties' contentions and, surely, does not override the trial court's instruction on damages. There was only one instruction given on damages, and that was No. 19. And it was incorrect. Further, even if defendant's contention can be construed as a correct statement of law, still it would not cure the trial court's conflicting, incorrect statement of the same principle. *See Chapin v. Rogers*, 80 N.M. 684, 459 P.2d 846 (Ct.App.1969).

For the above reasons, I dissent.

SOSA, Senior Justice (dissenting).

I hereby adopt as my dissent the majority opinion of the court of appeals as appended herein in full.

APPENDIX

No. 9235.

Court of Appeals of New Mexico.

March 29, 1988.

OPINION

ALARID, Judge.

Plaintiffs, Cal (Cal) and Keith (Buddy) Foutz, sued First Interstate Bank of Gallup (FIBG) for fraud and negligent misrepresentation in connection with a transaction involving plaintiffs and Robert Berni (Berni). The case was tried to a jury. At the close of plaintiffs' case-in-chief, defendant moved for a directed verdict on all claims. The trial court granted defendant a directed verdict on plaintiffs' fraud claims and on certain claims of alleged negligent misrepresentation, but denied the motion on plaintiffs' claims of negligent misrepresentation of the value of Berni's assets. The jury returned a verdict for plaintiffs. Subse-

quently, defendant filed a motion for a new trial, which was denied. Defendant now appeals, claiming that: (1) the jury was improperly instructed concerning the measure of damages; and (2) the evidence was insufficient to uphold the verdict. We affirm.

FACTS

Plaintiffs entered into a business relationship with Berni during the summer of 1981. The precise nature of this business relationship was not at issue in this case; suffice it to say that each of the plaintiffs contributed $50,000, Berni contributed some equipment and a wrecker's license, and the parties began two businesses known as Buddy's Used Cars and B & F Auto Center and Wrecker Service, both of which were managed and operated by Berni. Subsequently, the Foutzes and Berni had several disagreements as to how the businesses were being handled, and in August 1982, Berni gave the Foutzes a promissory note in the amount of $100,000 to buy them out of the businesses. Thereafter, Berni continued to operate both businesses. Berni was unable to make all of the payments on the note, and by December 1982 or January 1983, the note was delinquent.

In December 1982 or January 1983, Cal Foutz was informed by an employee of FIBG that a note on which he was liable was delinquent. Cal, a long-standing customer of FIBG, expressed some surprise and indicated that he was unaware of the pending note. Subsequent inquiries by Cal of Kenneth Agee (Agee), the bank vice-president who handled Berni's account with FIBG, disclosed that in September 1981 FIBG had extended Berni a $50,000 unsecured loan. In connection with this loan, Berni had apparently supplied FIBG with a partnership resolution executed by the Foutzes and Berni in connection with a smaller loan from a different bank. In September 1982, the $50,000 loan had apparently been "rolled over." At the time of Cal's meeting with Agee, the loan was delinquent and there was some suggestion that FIBG was looking to the Foutzes to make payments on this loan.

The initial meeting between Cal and Agee led to a second meeting in January 1983 involving both the Foutzes and Agee. As a result of these meetings, FIBG agreed to loan Berni $163,703, $100,000 of which was paid to the Foutzes to buy out the promissory note that Berni had previously given them. The other $63,703 was used to consolidate a number of loans that Berni had with FIBG at that time, including but by no means limited to the balance still due on the $50,000 unsecured loan given to Berni in September 1981. In connection with this loan, FIBG took a security interest in all the assets of Buddy's Used Cars and B & F Auto Center and Wrecker Service, as well as a security interest in Berni's personal residence and other personal property. In addition, the Foutzes signed a continuing guarantee of the loan to Berni up to the amount of $150,000, and a hypothecation agreement pledging their certificate of deposit in the amount of $100,000 as collateral for the loan to Berni. Both documents are dated February 1983.

Subsequently, Berni defaulted on the payments of the loan. Ultimately, by letter dated January 11, 1984, FIBG notified Cal that FIBG had repossessed all the collateral available to it under the loan agreement with Berni and it had no alternative but to exercise its rights under the hypothecation agreement and continuing guarantee to take the certificate of deposit. At the time FIBG took the certificate to apply it against the loan balance, there was still a balance remaining, after the application of the certificate of deposit, in the amount of $21,741.08 which FIBG was expecting to satisfy out of the contract receivables of Buddy's Used Cars.

PROPRIETY OF THE INSTRUCTION CONCERNING MEASURE OF DAMAGES

FIBG contends that instruction no. 19, given by the trial court, is an incorrect statement of the measure of damages available to plaintiffs. Instruction no. 19 provides in pertinent part:

If you should decide in favor of the Plaintiff [sic] on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate them for any of the following elements of damages proved by the Plaintiffs to have resulted from the negligent misrepresentation as claimed:

The value of the loss of the Certificates [sic] of Deposit. The value of the loss of interest on the Certificates [sic] of Deposit.

FIBG attacks this instruction as an incorrect statement of the measure of the damages available to plaintiffs under either a rescission theory or a negligent misrepresentation theory.

The standard of review on appeal is well-settled. Jury instructions must correctly state the law and be based on the evidence. *Pittard v. Four Seasons Motor Inn, Inc.,* 101 N.M. 723, 688 P.2d 333 (Ct.App.1984). The instructions are sufficient if they fairly present the issues and the applicable law. *Id.* On appeal, the question is whether all the instructions, read and considered together, fairly present the issues. *See Webb v. Webb,* 87 N.M. 353, 533 P.2d 586 (1975).

FIBG's argument concerning the damages available for rescission misses the mark. The case was not submitted to the jury on a rescission theory, nor could it have been. *See* Committee Comment to SCRA 1986, 13–814. FIBG was not entitled to an instruction on an issue foreign to the theory on which the case was submitted to the jury. FIBG's second attack on the propriety of the jury instruction turns on its contention that the $100,000 promissory note from Berni to the Foutzes was essentially worthless. The first jury instruction instructed the jury on the theories of the case of both plaintiffs and defendant, including defendant's theory that plaintiffs were not damaged because the promissory note was worthless.

The tort of negligent misrepresentation is articulated in the *Restatement (Second) of Torts* § 552 (1977), and adopted in *Stotlar v. Hester,* 92 N.M. 26, 582 P.2d 403 (Ct.App.1978). The section reads:

Information Negligently Supplied for the Guidance of Others

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

The *Restatement (Second) of Torts* is persuasive authority and we believe that this section applies in the instant case. Section 552 and comments (a) and (b) indicate that damages for the tort of negligent representation are determined by "out-of-pocket loss" or reliance damages. That measure of damages, as described in Section 552B(1)(a), is: "the difference between the value of what he [plaintiff] has received in the transaction and its purchase price or other value given for it." In the present case, the out-of-pocket loss is equal to the difference between the amount plaintiffs gave and the amount they received in the secured transaction with FIBG, i.e., the continuing guaranty and the hypothecation agreement of February 1983. The difference between what plaintiffs gave, a $100,-000 certificate of deposit plus unpaid interest, and what they received, nothing, is $100,000 plus interest. This amount corresponds with jury instruction no. 19, which sets forth the compensation for negligent misrepresentation at the value of the loss of the certificates of deposit, plus the value of lost interest on the same. Under the trial court judgment, plaintiffs would thus receive $75,000, or $100,000 less the dollar amount corresponding to their 20% attributed negligence and Berni's 5% attributed negligence. Read as a whole, the jury instructions adequately and properly instructed the jury on defendant's theory of the case. *Webb v. Webb.*

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE VERDICT

Defendant raises a number of arguments concerning the sufficiency of the evidence to support the verdict. The standard of review on appeal is well-settled. On an appeal, all disputed facts are resolved in favor of the party who got the verdict, and all inferences indulged in the support of the verdict. *Evans Products Co. v. O'Dell,* 96 N.M. 500, 632 P.2d 735 (1981). The same general rules apply where a motion for judgment notwithstanding the verdict is denied. *Barnes v. Sadler Assocs., Inc.,* 95 N.M. 334, 622 P.2d 239 (1981). The verdict must be upheld if, after viewing the evidence in the light most favorable to support the verdict, the appellate court finds that the verdict is supported by substantial evidence. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and has been defined as evidence of substance which establishes facts from which reasonable inferences may be drawn." *Barnes.*

In this appeal, FIBG attacks the sufficiency of the evidence concerning four areas: the value of Berni's assets; the reasonable grounds for Agee's belief as to the truth of his representation of the value of Berni's assets; the reasonableness of the Foutzes' reliance on the representation of Berni's assets; and finally, on the proof of damages. We have carefully reviewed the record in this case and have concluded that sufficient evidence was presented in each area raised by FIBG and, therefore, that a challenge based on insufficient evidence must fail.

The verdict and the trial court's denial of defendant's motion for a new trial are affirmed.

The joint request of the parties for oral argument is denied. *See Garcia v. Genuine Parts Co.*, 90 N.M. 124, 560 P.2d 545 (Ct.App.1977).

IT IS SO ORDERED.

FRUMAN, J., concurs.

BIVINS, J., dissents.