[No. 2907–3.  Division Three.  September 20, 1979.]

DAVID J. MARTIN, ET AL, *Respondents*, v. DEAN MILLER, *Appellant*.

*David L. Broom, Wm. Fremming Nielsen,* and *Hamblen, Gilbert & Brooke,* for appellant.

*Edward A. Dawson,* for respondents.

MITCHELL, J.*—Defendant, Dean Miller, appeals from a decision finding him liable in common–law fraud to the plaintiffs, Martin, Halverson and Farrell, by inducing them to change their employment based upon representations made by Miller in connection with a marketing scheme for the sale of sophisticated speaker equipment.

In the summer of 1971, Dean Miller came to Spokane promoting the sale of the speaker known as the "Sound Star" audio transducer. This product was purportedly designed to act as a substitute for conventional speakers in the space program and was represented to be adaptable for use with record players, radios, tape decks and other sound devices. Mr. Miller's promotional efforts were directed primarily toward the solicitation of salesmen and the development of a pyramid–type marketing network. Plaintiff Halverson, impressed by Mr. Miller's demonstration, contacted his friend, plaintiff Farrell, and the two men decided to form a partnership for the sale of the transducer. It is agreed Mr. Farrell had never met or talked to defendant Miller. In the fall of 1971, plaintiff Martin also purchased

---

*Judge James B. Mitchell is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

an inventory of transducers, having learned of the promotional scheme from defendant Stieffen.

The plaintiffs had no prior knowledge of electronic speaker equipment, but apparently felt confident of their investments based upon the representations of Mr. Miller. To that end, plaintiffs decided to quit their existing jobs and devote their full-time energies to the marketing of the transducer. The results were disastrous and the plaintiffs brought this action to recoup their losses. The court awarded the plaintiffs $30,309.05, representing the value of their respective lost services and expenses proximately resulting from the defendant's fraud.

Mr. Miller contends the plaintiffs failed to meet their burden of proving fraud by clear, cogent and convincing evidence.

Common-law fraud consists of nine essential elements which must be proven by clear, cogent and convincing evidence:

> (1) A representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; (9) his consequent damage.

*Sigman v. Stevens–Norton, Inc.,* 70 Wn.2d 915, 920, 425 P.2d 891 (1967); *Turner v. Enders,* 15 Wn. App. 875, 878, 552 P.2d 694 (1976). Mr. Miller does not specify the nature of the plaintiffs' failure of proof. Viewing all the evidence in the light of *In re Sego,* 82 Wn.2d 736, 739, 513 P.2d 831 (1973), we conclude there was substantial evidence that the nine elements were proven by clear, cogent and convincing evidence.

Mr. Miller was found to have made the following representations of existing fact:

> (1) That the defendant, Dean Miller, was in control of the company, Sound Star;
> (2) That the company was going public;

(3) That there were no competitors in the field;

(4) That the product was perfected in the United States space program;

(5) That the space program developed the product into a new 10 point patent;

(6) That the company was offering six other products in the space program;

(7) That the defendant, Dean Miller, arranged for a Stanford Institute market research study, the results of which were favorable;

(8) That the quality control for the product for the retail market had been established;

(9) That the product was used in the DC 10 airplane as a speaker system.

These representations are documented in the record, which included a tape recording of Mr. Miller's promotional demonstration in Spokane.

These representations were false. Mr. Miller was not in control of Sound Star and had no voice in management. The company did not go public. There were several other competitors in the field at the same time. The product was not perfected in the space program, and NASA had no involvement in procuring the patent. The company did not have six other products from the space program ready to go onto the market. There was no Stanford Research Institute market report. The product would not and could not be used in the DC 10 aircraft, and the product would not work in the retail market or for home use.

The record also supports the conclusion that the representations were material to the plaintiffs' decision to enter into a purchase and marketing agreement with the defendant. A reasonable man would clearly attach importance to the existence of these representations in connection with his decision to enter into the transaction. *See* Restatement (Second) of Torts § 538, at 80 (1976). The plaintiffs had no prior knowledge or experience in the field of electronic speakers, but instead relied upon the representations of Mr. Miller. This reliance was reasonable and justifiable in light

of Mr. Miller's superior knowledge and marketing experience in this field. *Magna Weld Sales Co. v. Magna Alloys & Research Pty. Ltd.,* 545 F.2d 668, 671 (9th Cir. 1976) (applying Washington law); *Boonstra v. Stevens–Norton, Inc.,* 64 Wn.2d 621, 626, 393 P.2d 287 (1964).

■ The evidence also supports the court's finding that Mr. Miller made the false representations with the intention and reasonable expectation that the plaintiffs would take action in reliance upon them. *Thorp v. Smith,* 18 Wash. 277, 279, 51 P. 381 (1897). The fact Mr. Halverson was the only party to meet and talk directly with Mr. Miller is not fatal to plaintiffs Farrell's and Martin's right of recovery. Restatement (Second) of Torts § 534 (1976) states at page 76:

> One who makes a fraudulent misrepresentation intending or with reason to expect that *more than one person or class of persons will be induced to rely on it,* or that there will be action or inaction in more than one transaction or type of transaction, is *subject to liability for pecuniary loss to any one of such persons* justifiably relying upon the misrepresentation in any one or more of such transactions.

(Italics ours.)

Finally, as a result of the defendant's glowing reports regarding the profit potential, the plaintiffs were implicitly, if not explicitly, induced to quit their existing jobs. They began to devote their full time and energies to the marketing of the audio transducer and traveled extensively throughout the Northwest. The product, however, did not perform as represented and the falsity of the representations then surfaced, all to the plaintiffs' damage. The trial court's finding of fraud is, therefore, affirmed.

Next, Mr. Miller assigns error to the court's award of damages. He contends that he did not induce the plaintiffs to change their employment by misrepresentation or otherwise—each plaintiff acknowledged individual responsibility for the decision to quit his respective job. The award of lost services and expenses was error, Mr. Miller contends,

because the risk of operating at a loss and the giving up of other employment are normal incidents of entering into a business venture. Therefore, plaintiffs should recover no damages resulting from a change of employment. We disagree.

██ When a person is fraudulently induced to change his employment, the appropriate measure of damages includes all losses proximately resulting from the fraud. The benefit of the bargain or out-of-pocket rules do not tend to make the plaintiff whole under these circumstances and are, therefore, inapplicable. *Salter v. Heiser*, 39 Wn.2d 826, 239 P.2d 327 (1951); *Chapman v. Marketing Unlimited, Inc.*, 14 Wn. App. 34, 38–40, 539 P.2d 107 (1975). The court correctly applied the *Chapman* rule.

Judgment of the Superior Court is affirmed.

GREEN, C.J., and McINTURFF, J., concur.

Reconsideration denied December 4, 1979.