[No. 3933–II. Division Two. May 8, 1981.]

NORTH PACIFIC PLYWOOD, INC., *Respondent*, v.
ACCESS ROAD BUILDERS, INC., *Appellant,*
WALCH LOGGING, INC., *Respondent.*

*John Hoover,* for appellant.

*Joe Gordon, Jr.,* and *Donald G. Ryan,* for respondents.

REED, C.J.—Defendant Access Road Builders, Inc., appeals a judgment over against it in favor of defendant Walch Logging, Inc., for fraud in inducing the assignment of a road building contract in Pierce County.

On appeal, Access Road Builders, Inc. (Access) challenges several rulings by the trial court: that the representations made were of existing fact, that Access had committed fraud and that plaintiff North Pacific Plywood, Inc. (North Pacific) had not. Access also takes issue with the measure of damages used by the trial court and its award of damages in excess of an indemnification agreement, prejudgment interest and attorney's fees. In full agreement with

the trial court, we conclude there is ample support for the findings in this case, even in light of the "highly probable" test which we apply when reviewing factual determinations where, as here, the quantum of proof required at trial is clear, cogent, and convincing evidence.[1] We also agree with the trial court's rulings on the matters of law raised by Access and, therefore, affirm the judgment.

In 1974, Access contracted with North Pacific to build a logging road needed by North Pacific in order to perform a United States Forest Service logging contract. The Forest Service contract contained the construction specifications for the road. Access did some preliminary work at the site, but in the spring of 1977 determined its work load was so heavy that it would be unable to complete the road. Looking for a substitute contractor, John Maestas, Access general manager, turned to defendant Walch Logging, Inc. At the Walch Logging shop, Maestas asked Mike Walch, the company's president, if he was interested in building the road. According to Walch and an unrelated bystander, Walch asked Maestas whether the road was "old style" or "new style."[2] Maestas reportedly replied it was old style, an easy job and said Walch could "whiz right through it." Walch walked along the road site and noted the surveyors' grading stakes placed by Access. He testified that he relied on Maestas' "old style" characterization and agreed to accept Access' assignment of its contract to build the road.

In June 1977, therefore, Maestas and Walch met with

---

[1]*In re Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973).

[2]The trial court found that "loggers and builders commonly" refer to "old style" and "new style" to differentiate two methods of road building. Although testimony conflicted, three witnesses testified in support of this finding, which we therefore will not disturb on appeal. *Bland v. Mentor*, 63 Wn.2d 150, 154, 385 P.2d 727 (1963). New style roads apparently are significantly more expensive, time consuming, and technically different to construct for two reasons focused on at trial. A builder may side cast debris, that is push it off to one side when building an old style road. For a new style road the debris must be removed to a designated disposal area. Culvert placement for new style roads can take up to 3 or 4 hours as compared to 15 to 20 minutes for old style.

plaintiff's representative, Viking Mattson. All three men signed an agreement assigning the road building contract to Walch Logging. The assignment incorporated all the terms of the contract between Access and North Pacific except the price, which was reduced from $49,993.41 to $43,500. In consideration of North Pacific's consent to the assignment, Access agreed to indemnify and hold North Pacific harmless from any default by Walch Logging up to $5,000.

In August 1977, Mike Walch consulted a representative of the United States Forest Service and learned, reportedly for the first time, that the road he had agreed to build was the more complex and time consuming "new style." Walch refused to continue the work without a $30,000 increase in price. Plaintiff refused to pay the additional amount and eventually had the road done by a substitute contractor for $73,275.

North Pacific then sued Walch Logging and Access to recover the extra cost to complete the road and attorney's fees as provided in its contract with Access. Walch Logging in turn cross–claimed against Access for any sums it might have to pay North Pacific on the ground Access had fraudulently induced Walch Logging to enter into the assignment. As the trial was about to begin, Access and North Pacific stipulated that Access would be released from all claims by North Pacific upon payment of the $5,000 indemnity. The case went to trial on North Pacific's complaint against Walch Logging and Walch Logging's claim against Access. The court held Walch Logging liable to North Pacific for the excess cost of building the road, less the $5,000 paid by Access, and awarded prejudgment interest and attorney's fees. The court then found Access had committed fraud in the assignment and awarded Walch Logging judgment over against Access for the amount of its North Pacific judgment and for its own attorney's fees.

Access first contends that Maestas' statements that the road was old style, permitting side casting, did not represent existing facts but were statements of law or opinion and therefore could not be fraudulent. *See* 37 Am. Jur. 2d

*Fraud and Deceit* §§ 45, 73 (1968). Our courts have characterized a statement as one of existing fact

> if a quality is asserted which inheres in the article so that, at the time the representation is made, the quality may be said to exist independently of future acts or performance of the one making the representation, independently of other particular occurrences in the future, and independently of particular future uses or future requirements of [the representee].

*Nyquist v. Foster,* 44 Wn.2d 465, 471, 268 P.2d 442 (1954). In effect, Maestas misrepresented the Forest Service specifications to Walch. The quality of being new or old style inhered in the specifications, existed at the time Maestas made the statements and was independent of Maestas, of other events, and of Walch's future uses or requirements. The trial court then correctly found the statements were representations of existing fact.

Access then asks this court to reweigh conflicting testimony and overrule the trial court's findings regarding Mike Walch's right to rely on Maestas' statements and their falsity. This we cannot do. Where evidence conflicts, as here, the reviewing court must determine only whether the evidence most favorable to the prevailing party supports challenged findings. *Bland v. Mentor,* 63 Wn.2d 150, 154, 385 P.2d 727 (1963).

The presence or absence of fraud in a given situation is a question of fact. *Bland,* 63 Wn.2d at 155. In Washington, common law fraud has nine essential elements, all of which must be established by clear, cogent, and convincing evidence:

> (1) A representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; (9) his consequent damage.

*Sigman v. Stevens–Norton, Inc.,* 70 Wn.2d 915, 920, 425

P.2d 891 (1967); *Martin v. Miller,* 24 Wn. App. 306, 308, 600 P.2d 698 (1979).

Access argues only against the trial court's findings regarding Mike Walch's right to rely on Maestas' statements and their falsity. We therefore consider that it has abandoned its objections to the findings regarding materiality, intent that Walch rely, his actual reliance and evidence of damages. *Lassila v. Wenatchee,* 89 Wn.2d 804, 809, 576 P.2d 54 (1978).

▮ Access contends that Mike Walch had no right to rely on Maestas' statements because Walch could have learned whether the road was new or old style by examining the publicly available Forest Service specifications himself. Evidence favorable to Walch Logging, however, showed that Maestas knew both what the specifications required and that if the road were not completed quickly, Access would be liable to North Pacific for any losses under the latter's contract with the Forest Service. The evidence also showed that an old style road would be easier and quicker to build. Mike Walch asked Maestas for the plan and profile (part of the specifications) when the two first discussed the matter. Maestas did not provide these documents until after the assignment was completed. Walch Logging presented expert testimony that the grading stakes, already in place, provided sufficient information to bid on an old style road. It thus appears highly probable, *see In re Sego,* 82 Wn.2d 736, 739, 513 P.2d 831 (1973), that Walch, having been told the road was old style and not having received the requested plans, had a right to rely on Maestas. He was not required to investigate further into public records, even though such investigation would have revealed the truth. *Boonstra v. Stevens–Norton, Inc.,* 64 Wn.2d 621, 626, 393 P.2d 287 (1964).

Regarding falsity, Access argues that the representations were not false and/or that Maestas did not know they were false. The court, however, expressly found the term "old style" was common in an industry in which Maestas had worked for 25 years. Maestas himself testified he had

meticulously reviewed the specifications for the road in 1974 when Access first bid on the project and knew them "intimately." At trial he denied being familiar with the term "old style." In his deposition, used to impeach his trial testimony, however, he indicated he had heard the term, but that another term was now used. The evidence most favorable to Walch Logging thus supports the conclusion that John Maestas knew what the term meant. There was no testimony that Maestas' statements were true. In fact, all testimony showed the contrary. The Forest Service representative testified the road was new style; the substitute contractor said the specifications did not allow side casting. It was, therefore, highly probable that the statements were false and that a person of Maestas' experience knew or should have known they were false. We will therefore not disturb this finding.

Similarly, we reject Access' challenge to the trial court's finding that North Pacific did not itself mislead Walch. The evidence shows that the North Pacific representative relied on Maestas' opinion when he told Walch the road was old style. The evidence further shows that Mike Walch knew that North Pacific's understanding of the specifications came from Maestas. Because the record contains the requisite evidence to support the court's finding, we will not disturb it. *In re Sego, supra.*

 Although Access next formally challenges the findings of damages, its argument focuses on the measure of damages. It claims Walch Logging should have had only the benefit of its bargain, *i.e.*, damages for breach of contract. Walch Logging, however, was not seeking recovery for breach of contract but rather damages, in the form of North Pacific's judgment against it, caused by Access' fraud. *See Salter v. Heiser,* 39 Wn.2d 826, 832, 239 P.2d 327 (1951). As provided in the contract, North Pacific was entitled to the extra cost of completing the work following Walch Logging's breach. *Westland Constr. Co. v. Chris Berg, Inc.,* 35 Wn.2d 824, 835, 215 P.2d 683 (1950) (damages where contractor refuses to perform measured by dif-

ference between contractor's price and actual cost of having another do work). *See also Prier v. Refrigeration Eng'r Co.,* 74 Wn.2d 25, 30, 442 P.2d 621 (1968). Walch Logging in turn was entitled to all damages proximately caused by the fraud. *Salter v. Heiser, supra.*

Access also claims that Walch Logging's failure to mitigate damages precludes its recovery for fraud. Access presents no authority in support of this argument which we therefore do not consider. *Lassila v. Wenatchee, supra.*

Access next seeks to limit Walch Logging's recovery to $5,000, arguing that the assignment should be construed as a novation which substituted Walch for it in any litigation arising out of the contract. The indemnity provision in the assignment contract refers, however, only to Access' liability to North Pacific. In no way does it limit the assignor's liability to the assignee for fraud. Walch Logging, as we have indicated here, is entitled to all damages proximately caused by Access' fraud. *Salter v. Heiser, supra.*

We turn next to Access' assertion that North Pacific's claim against Walch Logging was unliquidated and therefore the court's award of prejudgment interest was improper. The fact that a claim is disputed does not make it unliquidated and therefore ineligible for prejudgment interest. *Seattle v. Dyad Constr., Inc.,* 17 Wn. App. 501, 520, 565 P.2d 423 (1977). The court may allow prejudgment interest when the amount due can be determined by referring to a fixed standard contained in a contract. *Prier,* 74 Wn.2d at 35. The original contract between North Pacific and Access provided that in the event of the contractor's breach, North Pacific could

> incur such costs as may be necessary to complete the contract and contractor shall remain liable to owner for completing said contract . . .

Once North Pacific paid the substitute contractor, its damages could be ascertained with certainty under the *Prier* standard. Prejudgment interest from that date was therefore proper.

Finally, Access argues that Walch was not entitled to

attorney's fees first, because the assignment contract did not provide for attorney's fees and, second, because the privity of North Pacific, Access and Walch Logging to the assignment contract precludes the award. Walch Logging notes that North Pacific was entitled to attorney's fees under the original contract but relies on indemnity principles to support the additional fees awarded to it against Access.[3]

The general rule in Washington is that attorney's fees are not recoverable except pursuant to statute, contractual obligation or some well recognized principle of equity. *State ex rel. Macri v. Bremerton,* 8 Wn.2d 93, 102, 111 P.2d 612 (1941). It is also a well settled rule in this state that where "the natural and proximate consequences" of a wrongful act by one person involve another in litigation with third persons, the wronged party may recover reasonable expenses of the litigation, including attorney's fees. *Wells v. Aetna Ins. Co.,* 60 Wn.2d 880, 882, 376 P.2d 644 (1962); *Vincent v. Parkland Light & Power Co.,* 5 Wn. App. 684, 686, 491 P.2d 692 (1971). This is true, however, only so long as the third person who institutes the action was not connected with the original transaction. *Armstrong Constr. Co. v. Thomson,* 64 Wn.2d 191, 195, 390 P.2d 976 (1964). The wrongful act may arise either "ex contractu or ex delicto." *Manning v. Loidhamer,* 13 Wn. App. 766, 769, 538 P.2d 136 (1975). Access is, of course, correct when it points out that North Pacific was privy to the assignment contract. The wrongful act which gave rise to this litigation, however, was not the assignment contract. It was the fraud committed by Access in inducing Walch Logging to accept the assignment before North Pacific even became involved in the transaction. The award of attorney's fees to Walch Logging was therefore proper. *Wilber v. Western Proper-*

---

[3]The contract was executed prior to the effective date of RCW 4.84.330 (September 21, 1977), which provides that where a contract contains a clause giving attorney's fees to any party, whichever party prevails is entitled to the award. The contract is thus not covered under the statute.

*ties,* 22 Wn. App. 458, 589 P.2d 1273 (1979).

Both respondents claim attorney's fees on appeal. The trial court awarded attorney's fees to North Pacific against Walch Logging because the contract provided for such fees in the event North Pacific was required to bring suit to recover the excess costs of completing the project. North Pacific settled all its claims against Access through the pretrial stipulation. Walch has not appealed North Pacific's judgment against it but appears in this court as a respondent. Thus, there appears to be no basis on which this court can award attorney's fees to North Pacific for this appeal. *See State ex rel. Macri v. Bremerton, supra.*

Nor is Walch Logging entitled to its attorney's fees on appeal. Unlike the fees incurred defending against the claim of North Pacific, Walch Logging does not incur fees on appeal as consequential damages of Access' wrongful act. Fees incurred in pursuing Access for indemnification are no different from those which Walch Logging would have incurred had it paid North Pacific's judgment and then pursued Access· by separate action for indemnification.

The judgment appealed from is affirmed in all respects.

PETRIE and PETRICH, JJ., concur.

Reconsideration denied June 16, 1981.

Review denied by Supreme Court September 25, 1981.