FILED
COURT OF APPEALS
DIVISION II

2014 JUL -1 AM 8: 49

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| COLUMBIA STATE BANK,<br>a Washington banking corporation,<br><br>                       Respondent,<br><br>    v.<br><br>AMAS CANZONI and TANANA CANZONI,<br>individually, and the marital community<br>composed thereof,<br><br>                       Appellants. | No. 44336-8-II<br><br><br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, J. — Amas Canzoni appeals the superior court's summary judgment order in favor of Columbia Bank.[1] Columbia was the beneficiary of a deed of trust to Canzoni's property, which was nonjudicially foreclosed after Canzoni's nonpayment of the promissory note secured by the deed of trust. The superior court's summary judgment order granted Columbia's complaint for specific performance of the deed of trust (by authorizing Columbia's entry on and inspection of Canzoni's property), returned Columbia's $100 bond, and dismissed Canzoni's claims with prejudice.

---

[1] Tanana Canzoni, Amas Canzoni's late wife, was also a party to this action. Tanana passed away in April of 2012. For the purposes of clarity, we refer to only Amas Canzoni throughout, despite Tanana's initial involvement.

No. 44336-8-II

On appeal, Canzoni argues that (1) Columbia's counsel testified as a witness by stating facts not in evidence, (2) the superior court's consideration of the promissory note's photocopy as admissible in the original note's place violated the best evidence rule, (3) Columbia's inability to produce the original note prevents it from being the note's holder, (4) Canzoni's "EFT instrument" discharged his loan debt to Columbia, (5) fraudulent or innocent misrepresentation rendered the note voidable, (6) a lack of consideration rendered the note void, (7) the superior court had no personal jurisdiction over Canzoni because he is a living person rather than a corporation, and (8) Eisenhower had an actual conflict of interest by serving concurrently as the deed of trust's trustee and as a representative of that deed of trust's beneficiary, Columbia. Because Canzoni's arguments have no merit, we affirm.

FACTS

A.    *Factual History*

1. *Canzoni's Equity Loan, Promissory Note, and Deed of Trust*

In 2002, Canzoni applied for and received a $200,000 equity loan from Community Mortgage Company. Canzoni signed a promissory note secured by a deed of trust. The note stated in part:

> In return *for a loan that I have received,* I promise to pay [] $200,000.00 . . . plus interest, to the order of the Lender. The Lender is Community Mortgage Company.
> I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

Clerk's Papers (CP) at 32 (emphasis added).

2

The deed of trust named Community Mortgage Company as the beneficiary and Chicago Title Insurance Company as the Trustee. The deed of trust stated in part:

> Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.

CP at 17. In open court, Canzoni admitted to signing the note and the deed of trust.

2. *Columbia's Acquisition of the Note and the Deed of Trust*

In 2003, Community Mortgage Company assigned the deed of trust to American Marine Bank. Chicago Title Insurance Company remained the trustee. Community Mortgage Company endorsed the note to American Marine Bank with an allonge. Columbia became the note's holder on January 30, 2010 after acquiring American Marine Bank's assets, including the note and deed of trust.[2] Columbia could not find the original note, but had the note's photocopy, which Columbia presented to the superior court.

3. *Canzoni's Default and "EFT Instrument"*

Canzoni had withdrawn the entire $200,000 loan principal by March 10, 2003. Canzoni made payments on the loan from October 1, 2002, until May 4, 2011. But then Canzoni stopped making payments on the loan, which placed him in default.

In 2012, following Canzoni's default, Canzoni attempted to discharge the remainder of his loan debt by sending Columbia a check for $185,656.41. This check was drawn on a closed bank account with Anchor Savings Bank. On the check's front, Canzoni wrote, "EFT Only" and "For Discharge of Debt." CP at 302. On the check's back, he wrote, "Not for Deposit EFT

---

[2] Columbia acquired American Marine Bank's assets as the successor in interest to the Federal Deposit Insurance Corporation, which was a receiver for American Marine Bank.

Only" and "For Discharge of Debt." CP at 303. Canzoni also signed the check's back as an

"Authorized Representative," and wrote "Without Recourse" under his signature. CP at 303.

Columbia informed Canzoni that it could not accept his check because, according to

Anchor Savings Bank, the check was not associated with any open account. Columbia offered to

accept payment by "cash, cashier's check, money order[,] or wire transfer." CP at 301.

### 4. *Eisenhower & Carlson, PLLC's Nonjudicial Foreclosure of Canzoni's Property*

Due to Canzoni's default and pursuant to the deed of trust, Columbia initiated nonjudicial

foreclosure proceedings against Canzoni's property. Columbia's legal representative,

Eisenhower & Carlson, PLLC (Eisenhower), was appointed as the deed of trust's trustee.

Eisenhower began a trustee's sale of the property.

### B. *Procedural History*

### 1. *Columbia's Complaint and Motion for Preliminary Injunction*

While the nonjudicial foreclosure was pending, Columbia filed a complaint for specific

performance of the deed of trust provision that authorized the lender's entry on and inspection of

the property. Columbia's complaint requested

> a court order immediately requiring [Canzoni] to grant Columbia Bank or its
> agents reasonable access to the Property for the purposes of conducting an
> appraisal and environmental inspection of the Property.

CP at 9. Columbia's complaint limited its request to an order requiring Canzoni to allow

Columbia to enter and inspect the property, stating that "[t]hrough this action, Columbia Bank is

not seeking satisfaction of [Canzoni's loan]." CP at 8. After filing its complaint, Columbia

moved the superior court to enter a preliminary injunction seeking reasonable access to the

property for the purposes of conducting an appraisal and environmental inspection.

No. 44336-8-II

2. *Canzoni's "Bill in Equity"*

In response to Columbia's complaint and motion for a preliminary injunction, Canzoni filed a document entitled "Bill in Equity." Canzoni's "Bill in Equity" requested many forms of relief, including that

> all alleged accounts, principal and interest, public and private side are paid in full and that there is no obligation whatsoever by the complainants to either make additional substitution or suffer any attempts of being deprived of land and property owned free and clear.
> That a 'FULL RECONVEYANCE DEED' and consequently the original Trust Res with wet ink signatures is released to the Complainants as paid in full without further ado.

CP at 58.

3. *Canzoni's Motion To Vacate the Superior Court's Preliminary Injunction*

After receiving Canzoni's "Bill in Equity," the superior court granted Columbia's request for a preliminary injunction, allowing Columbia to enter and inspect the property. The preliminary injunction required Columbia to execute and file a $100 bond. Canzoni then moved to vacate this preliminary injunction.

During Canzoni's argument to vacate the preliminary injunction, he made the following statements to the superior court:

> But nevertheless, before we stopped payments on the loans, or the alleged loans, Columbia Bank officially is a servicer of the loan and not necessarily an issuer of a loan.
> So we did basically sign, let's say, the promissory note and the deed of trust not being aware what's—of what's really going on, and that led to the understanding that we are actually not having been loaned any money.

Verbatim Report of Proceedings (VRP) at 35. Later during that same hearing, Columbia's attorney made the following statements to the superior court, which Canzoni claims constituted witness testimony:

Your Honor, if I may continue. The points that Mr. Canzoni raised during his initial argument was I believe, if I heard correctly, acknowledged that at some point in time he did sign a note and deed of trust. Although—and made payments towards that note and deed of trust, at a later date decided that he was not subject to the note and deed of trust and stopped making payments.

. . . .

[B]ecause there's no basis in law or fact for them under 12(b)(6) or otherwise. This is not a case where there is a bona fide dispute, for instance, that a loan was made. This is not a case where, for instance, a national bank using robo signers has apparently started a wrongful foreclosure. This is a case where the record reflects abundantly there was a loan. It was made. It's an obligation of the defendants, and it's been in default for some period of time. At the core factually we submit this is a very simple case, and as a result, we'd ask the court to deny the defendant's motions thereby enabling this case to remain pending and allowing the bank to proceed with a nonjudicial foreclosure sale.

VRP at 49, 88. After the hearing, the superior court entered an order reaffirming its preliminary injunction.

### 4. *Canzoni's Motions To Dismiss, Stay Trustee's Sale, and Challenge Jurisdiction*

After the superior court reaffirmed its preliminary injunction, Canzoni filed three motions with the superior court. First, Canzoni moved under CR 12(b)(6) to dismiss Columbia's complaint for failure to state a claim upon which relief can be granted. Second, Canzoni moved to stay the trustee's sale until the superior court ruled on his CR 12(b)(6) motion. Third, Canzoni moved to challenge the superior court's jurisdiction to hear this matter on grounds that he is a living person, rather than a corporate entity. The superior court denied Canzoni's three motions in their entirety.

### 5. *Canzoni's Motion To Stay the Nonjudicial Foreclosure Proceedings*

After the superior court denied Canzoni's three motions, Eisenhower successfully sold the property through its trustee's sale. Following this sale, Canzoni moved the superior court to

6

stay the nonjudicial foreclosure proceedings until the conclusion of the litigation between Canzoni and Columbia. The superior court denied Canzoni's motion.

6. *Columbia's Summary Judgment Motion*

Following the superior court's order denying Canzoni's motion to stay the nonjudicial foreclosure proceedings, Columbia moved for summary judgment, requesting

(1) the entry of summary judgment against [Canzoni] on [Columbia's] claim for specific performance (access to property), (2) release of its $100.00 cash bond, and (3) dismissal of [Canzoni's] claims with prejudice.

CP at 526. Columbia's summary judgment motion explained that because the property's nonjudicial foreclosure was complete, it had no further need to enter the property.

The superior court granted Columbia's motion for summary judgment. The superior court's summary judgment order granted Columbia's complaint for specific performance of the deed of trust (by authorizing Columbia's entry on and inspection of Canzoni's property), returned Columbia's $100 bond, and dismissed Canzoni's claims with prejudice. Canzoni appeals the superior court's summary judgment order.

ANALYSIS

We review summary judgment orders de novo. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Summary judgment is appropriate if, when viewing the facts in the light most favorable to the nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c); *Ranger Ins.*, 164 Wn.2d at 552. Mere allegations or conclusory statements of facts unsupported by evidence do not sufficiently establish the existence of a genuine issue of material fact. *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 132, 769 P.2d 298 (1989); *Discover Bank v. Bridges*,

154 Wn. App. 722, 727, 226 P.3d 191 (2010). The nonmoving party may not rely on speculation, argumentative assertions that unresolved issues remain, or its affidavits being considered at face value. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). After the moving party has submitted adequate affidavits, the burden shifts to the nonmoving party to set forth specific facts that sufficiently rebut the moving party's contentions and disclose the existence of a material issue of fact. *Seven Gables Corp.*, 106 Wn.2d at 13. We consider only admissible facts and affidavits in determining whether summary judgment is proper. CR 56(e); *King County, Fire Prot. Dist. No. 16 v. Hous. Auth. of King County.*, 123 Wn.2d 819, 826, 872 P.2d 516 (1994).

Under the Deed of Trust Act,[3] a deed of trust is a three-party transaction. *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 92-93, 285 P.3d 34 (2012). Land is conveyed by a borrower (the grantor), to a third party (the trustee), who holds title in trust for a lender (the beneficiary), as security for credit or a loan. 175 Wn.2d at 93. The deed of trust protects the lender by giving it the power to nominate a trustee, who then has the power to sell the property if the borrower defaults. 175 Wn.2d at 88. If the borrower defaults, the trustee can conduct a nonjudicial foreclosure, and sell the property at a trustee's sale. *Rucker v. Novastar Mortg., Inc.*, 177 Wn. App. 1, 10-11, 311 P.3d 31 (2013).

On appeal, Canzoni argues that (1) Columbia's counsel testified as a witness by stating facts not in evidence, (2) the superior court's consideration of the promissory note's photocopy as admissible in the original note's place violated the best evidence rule, (3) Columbia's inability to produce the original note prevents it from being the note's holder, (4) Canzoni's EFT

---

[3] Former Chapter 61.24 RCW (2012).

instrument discharged his loan debt to Columbia, (5) fraudulent or innocent misrepresentation rendered the note voidable, (6) A lack of consideration rendered the note void, (7) the superior court has no personal jurisdiction over Canzoni because he is a living person rather than a corporation, and (8) Eisenhower had an actual conflict of interest by serving concurrently as the deed of trust's trustee and as a representative of that deed of trust's beneficiary Columbia. Canzoni's arguments have no merit.

## I. COLUMBIA'S COUNSEL DID NOT TESTIFY AS A WITNESS

Canzoni argues that Columbia's counsel testified as a witness during its arguments before the superior court by stating facts not in evidence, thereby violating Canzoni's due process rights and the hearsay rule. We disagree because counsel's comments did not constitute testimony.

Canzoni's challenge addresses two specific excerpts from the arguments before the superior court. Every factual assertion presented by Columbia's counsel in these two excerpts was based on either Canzoni's statements to the superior court or evidence properly before the superior court (the note and deed of trust supported the loan's existence and a loan payment schedule supported the length of Canzoni's default). Thus, Columbia's counsel did not testify as a witness in the challenged excerpts.

## II. CONSIDERING PHOTOCOPY AS ADMISSIBLE DID NOT VIOLATE BEST EVIDENCE RULE

Canzoni argues that the superior court's consideration of the note's photocopy as admissible in the original note's place violated the best evidence rule because Canzoni cannot know whether the photocopy was altered from the original unless Columbia produces the original. We disagree.

We review evidence rulings in conjunction with summary judgment motions de novo. *Parks v. Fink*, 173 Wn. App. 366, 375, 293 P.3d 1275, *review denied*, 177 Wn.2d 1025 (2013). ER 1002 states that "[t]o prove the content of a writing . . . the original writing . . . is required, except as otherwise provided in these rules." ER 1003 states that a duplicate of a written instrument is admissible to the same extent as the original document unless a genuine question is raised as to the original's authenticity, or it would be unfair to admit the duplicate in the original's place. Under ER 1001(d):

> A "duplicate" is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduce the original.

Here, Columbia presented the note's photocopy, which qualifies as a duplicate of the original note. *See Braut v. Tarabochia*, 104 Wn. App. 728, 732, 17 P.3d 1248 (2001). Canzoni does not dispute the *original*'s authenticity, but argues that it was unfair to consider the note's photocopy as admissible in the original note's place. Canzoni provided no evidence that the duplicate was altered from the original in any way, but instead speculates that it is possible that the duplicate was altered, and that Columbia must produce the original to ensure that the duplicate was not altered.

Canzoni's argument constitutes speculation without evidence that the note was altered. Because Canzoni may not rely on this speculation, we hold that it was not unfair to consider the note's photocopy as admissible in the original note's place.

### III. COLUMBIA IS THE NOTE'S HOLDER

Canzoni argues that because Columbia cannot produce the original note, it cannot be the note's holder, which prevents Columbia from being the deed of trust's beneficiary. We disagree.

Traditionally, a deed of trust's beneficiary is the lender who loaned money to the borrower. *Bain*, 175 Wn.2d at 88. But lenders are free to sell the secured debt, typically by selling the note signed by the borrower. 175 Wn.2d at 88. The Deed of Trust Act recognizes that the deed of trust's beneficiary at any one time might not be the original lender. 175 Wn.2d at 88. The Act therefore gives the debt's subsequent holders "the benefit of the act by defining 'beneficiary' broadly as 'the holder of the instrument or document evidencing the obligations secured by the deed of trust.'" 175 Wn.2d at 88 (quoting RCW 61.24.005(2)).

Proof that the beneficiary holds the note secured by a deed of trust is a statutory requisite to a trustee's sale. RCW 61.24.030(7)(a). "[O]nly the actual holder of the promissory note or other instrument evidencing the obligation may be a beneficiary with the power to appoint a trustee to proceed with a nonjudicial foreclosure on real property." *Bain*, 175 Wn.2d at 89.

But there is no requirement that a beneficiary or trustee produce the original note as long as the beneficiary or trustee has "proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust. A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note . . . shall be sufficient proof." RCW 61.24.030(7)(a).

11

No. 44336-8-II

Here, Columbia produced a photocopy of the original note, and Columbia's assistant vice president declared under penalty of perjury that Columbia is the note's holder because it acquired American Marine Bank's assets, and because no other party has an interest in the note. Canzoni does not assert any facts or evidence that contradicts Columbia's status as the note's holder. Canzoni instead argues that Columbia cannot be the note's holder unless it produces the original note. This is not an accurate statement of the law. The declaration of Columbia's assistant vice president stating that Columbia is the note's holder is sufficient proof of Columbia's status as the note's holder. RCW 61.24.030(7)(a). Thus, no genuine issues of material fact exist as to whether Columbia is the note's holder.

IV. THE "EFT INSTRUMENT" DID NOT DISCHARGE CANZONI'S LOAN DEBT

Canzoni argues that his "EFT instrument," a check written on a closed account, has discharged his loan debt to Columbia. We disagree.

Canzoni's "EFT instrument" is a check drawn on a closed account with Anchor Savings Bank. Canzoni argues that this instrument was some form of legal tender, but he cites no law establishing that checks drawn on a closed or non-existent bank account can discharge a debt simply because the check's drafter characterized it as an "EFT instrument." No such law exists. Thus, we hold that Canzoni's "EFT instrument did not discharge his loan debt.

V. THE NOTE IS NOT VOIDABLE FOR MISREPRESENTATION

Canzoni argues that the note is voidable for containing a fraudulent or innocent misrepresentation because while the note referred to "a loan that I have received" in the past tense, Canzoni did not receive the loan money until after signing the note. We disagree.

12

"A fraudulent misrepresentation or, under the right circumstances, even a material innocent misrepresentation can render a contract voidable." *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 390, 858 P.2d 245 (1993). Fraudulent and innocent misrepresentation both require the claimant to demonstrate a misrepresentation of a *material* fact. *Hoffman v. Connall*, 108 Wn.2d 69, 72, 736 P.2d 242 (1987); *Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194 (1996). A fact is material if a reasonable person would attach importance to the representation's existence in connection with his decision to enter into the transaction. *Martin v. Miller*, 24 Wn. App. 306, 309, 600 P.2d 698 (1979).

Here, Canzoni argues that the note's statement defining the loan as a loan that Canzoni *had* received, as opposed to a loan that he would receive after signing the note, misrepresented a material fact. A reasonable person would not attach importance to the existence of this difference in tense in connection with his or her decision to enter into the loan agreement by signing the note. Thus, because Canzoni failed to allege that the note contained a misrepresentation of a *material* fact, the note is not voidable for containing a fraudulent or innocent misrepresentation.[4]

VI. THE NOTE IS NOT VOID FOR LACKING CONSIDERATION

Canzoni argues that consideration did not support the note because while the note referred to "a loan that I have received," Canzoni did not receive the loan money until after signing the note. CP at 32. We disagree.

---

[4] Canzoni asserts that the use of the term "money" in the note and deed of trust constituted a misrepresentation because "money" is an ambiguous term in the age of modern finance. But Canzoni provides no explanation as to how this alleged ambiguity caused a misrepresentation in the meaning of the documents that he signed. Thus, Canzoni's argument suffers from a lack of reasoned argument, making it insufficient to warrant judicial consideration. *Postema v. Pollution Control Hearings Bd.*, 142 Wn.2d 68, 123-24, 11 P.3d 726 (2000).

Determining whether consideration supports a contract is a question of law reviewed de novo. *Hanks v. Grace*, 167 Wn. App. 542, 548, 273 P.3d 1029, *review denied*, 175 Wn.2d 1017 (2012). "Consideration is a bargained-for exchange of promises." *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 833, 100 P.3d 791 (2004).

Here, Canzoni signed the note and the deed of trust, which promised to give him a loan of $200,000 in exchange for repayment with interest. This is a bargained-for exchange of promises. That one line of the note used the past tense in referring to "the loan I have received" when Canzoni had not received the loan money until after signing the note, does not change that there was a bargained-for exchange of promises. Thus, consideration supported the note.

## VII. CANZONI WAIVED HIS PERSONAL JURISDICTION DEFENSE

Canzoni argues that because he is a living person, rather than a corporate entity, the superior court has no personal jurisdiction over him. We hold that Canzoni has waived his lack of personal jurisdiction defense.

A party waives the defense of lack of personal jurisdiction by seeking affirmative relief in the courts, thereby invoking the court's jurisdiction. *In re Marriage of Parks*, 48 Wn. App. 166, 170, 737 P.2d 1316 (1987). "Affirmative relief is defined as '[r]elief for which defendant might maintain an action independently of plaintiff's claim and on which he might proceed to recovery, although plaintiff abandoned his cause of action or failed to establish it.'" *Negash v. Sawyer*, 131 Wn. App. 822, 827, 129 P.3d 824 (2006) (quoting *Grange Ins. Ass'n v. State*, 110 Wn.2d 752, 765-66, 757 P.2d 933 (1988)) (alteration in original).

14

Here, Columbia's complaint was limited to requesting entry onto the property for the purposes of conducting an appraisal and environmental inspection. Columbia's complaint did not request the loan's repayment. The nonjudicial foreclosure was not part of Columbia's complaint because it was *nonjudicial*.

Canzoni responded to Columbia's complaint and motion for a preliminary injunction by filing a "Bill in Equity" that requested an order ruling that Canzoni's loan was paid in full and requiring Columbia to provide Canzoni a reconveyance deed. This relief requested in Canzoni's "Bill in Equity" is relief for which Canzoni might maintain an action independently of Columbia's claim for entry on and inspection of Canzoni's property, and on which Canzoni might proceed to recovery, although Columbia abandoned its cause of action or failed to establish it. Thus, Canzoni waived his challenge to personal jurisdiction by filing his "Bill in Equity."

## VIII. EISENHOWER DID NOT HAVE AN ACTUAL CONFLICT OF INTEREST

Canzoni argues that Eisenhower's concurrent service as the deed of trust's trustee and as the representative of that deed of trust's beneficiary caused an actual conflict of interest. We disagree because Canzoni supports his argument with only speculation.

An attorney has been allowed to serve concurrently as the deed of trust's trustee and as the representative of that deed of trust's beneficiary since the legislature "specifically amended [RCW 61.24.020] in 1975 to allow an employee, agent or subsidiary of a beneficiary to also be a

trustee" of the deed of trust.[5] *Cox v. Helenius*, 103 Wn.2d 383, 390, 693 P.2d 683 (1985); *see Meyers Way Dev. Ltd. P'ship v. Univ. Sav. Bank*, 80 Wn. App. 655, 666 n.8, 910 P.2d 1308 (1996). But if an actual conflict of interest with the debtor results from the creditor's attorney serving as trustee, the attorney cannot continue serving as the trustee. *Meyers*, 80 Wn. App. at 666.

Here, Canzoni speculates without evidence that Eisenhower's concurrent service as the deed of trust's trustee and as the representative of that deed of trust's beneficiary, Columbia, means that Eisenhower is likely to have a conflict of interest because it is "likely" to have a vested interest in seeing Canzoni's home foreclosed. Canzoni may not rely on his mere speculation as to Eisenhower's motives to establish an actual conflict of interest. Thus, no genuine issues of material fact exist as to whether Eisenhower had an actual conflict of interest.[6]

## ATTORNEY FEES

Canzoni requests attorney fees and costs on appeal. RAP 18.1 requires a party to submit argument and citation to authority entitling it to attorney fees and costs on appeal. *Wachovia SBA Lending, Inc. v. Kraft*, 165 Wn.2d 481, 493, 200 P.3d 683 (2009). Canzoni submits no authority or argument as to why he should receive attorney fees and costs, and thus, we deny

---

[5] The legislature did this by deleting "that portion of [RCW] 61.24.020 which read, 'nor may the trustee be an employee, agent, or subsidiary of a beneficiary of the same deed of trust.'" *Meyers Way Dev. Ltd. P'ship v. Univ. Sav. Bank*, 80 Wn. App. 655, 666 n.8, 910 P.2d 1308 (1996) (quoting LAWS OF 1975, 1st Ex. Sess., ch. 129, § 2).

[6] Without citation to authority, Canzoni also asserts that the superior court had no subject matter jurisdiction over the claims at issue in this case. "It is well settled that a party's failure to assign error to or provide argument and citation to authority in support of an assignment of error, as required under RAP 10.3, precludes appellate consideration of an alleged error." *Escude v. King County. Pub. Hosp. Dist. No. 2*, 117 Wn. App. 183, 190 n.4, 69 P.3d 895 (2003). Thus, we do not consider Canzoni's challenge to subject matter jurisdiction.

No. 44336-8-II

Canzoni's request. *See Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 171, 273 P.3d 965 (2012).

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Johanson, C.J.

_____
Melnick, J.

17